Amended Complaint

Case No: **10-503**

| | |
|---|---|
| Name: | **MICHAEL BENSON SPARLIN** and **SHARON JEANETTE SPARLIN H/W** |
| Address: | 9151 E Showcase Lane |
| City, State, Zip: | Tucson, AZ 85749 |
| Daytime Phone: | 520-760-0200 |

*Representing Self, Without a Lawyer*

FILED
RECEIVED
LODGED
COPY

OCT 29 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

**MICHAEL BENSON SPARLIN** and
**SHARON JEANETTE SPARLIN** H/W
Plaintiffs

v

**CHASE HOME FINANCE** and
**JPMORGAN CHASE & CO** and
**BAC HOME LOANS SERVICING, L.P.** and
**BANK OF AMERICA N.A**
Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO: **CV 10-503-TUC-FRZ**
**CV 10-507-TUC-FRZ**
**CV 10-508-TUC-FRZ**
**CONSOLIDATED**

**AMENDED COMPLAINT**

(Hon Frank Zapata)

COMES NOW Plaintiffs, Michael Benson Sparlin and Sharon Jeanette Sparlin, to file their Amended Complaint in compliance with this courts ORDER dated October 1, 2010.

## PARTIES

(1)     Plaintiffs are Michael Benson Sparlin & Sharon Jeanette Sparlin, 9151 E Showcase Lane, Tucson, AZ 85749, hereinafter referred to as the "Plaintiff."

(2)     Currently known defendants are Bank of America,N.A., ("BOA"), BAC Home Loans Servicing, L.P. ("BAC"),  JPMorgan Chase & Co. ("JPMC") and Chase Home Finance ("CHASE"), hereinafter collectively referred to as the "Defendants".

## INTRODUCTION

(3)     In this instant case, Plaintiffs seek the injunction of various foreclosure and eviction proceedings based on Defendants routine failure to comply with the statutory prerequisites to foreclosure.

(4)     This action also includes violations of  the Truth In Lending Act ("TILA") (*15 U.S.C. §§1601 et seq.*) and the Real Estate Settlement and Procedures Act ("RESPA") (*12 U.S.C. §2602*)

(5)     The State of Arizona is a Non-Judicial state and Plaintiffs are entitled to the protections and requirements provided under the Arizona laws and Statutes.  All foreclosing entities must strictly comply with these prerequisites as well as other basic principles of contract law and consumer protection law.

(6)     Until recently, there has been a presumption of competency afforded to these foreclosure entities, allowing these foreclosure cases to move forward.

(7)     In recent months, however, many foreclosing entities, including the Defendants, have demonstrated a pervasive and willful disregard of knowledge, facts, and statues in allowing these foreclosures to proceed.

(8)     In Arizona the foreclosure process has become an undisciplined and lawless rush to seize homes. Thousands of foreclosures are plainly void under Arizona statute.  Many borrowers never obtain the statutorily required notices, and a majority of the foreclosures are processed entirely on inaccurate recitations concerning ownership of the deed of trust, the note, or the assignment.

(9)     The reckless industry-wide culture of the 'foreclosure mills' has enabled the Defendants to aggressively litigate against the borrowers without any regard for the satisfaction of the legal burdens required.

(10)    This same reckless industry-wide attitude also manifests itself in a complete refusal and disregard to negotiate in good faith with the borrowers which routinely have the Defendants making misrepresentations and misleading statements to the Plaintiffs in any type of loan modification, short sale or settlement discussions.

## JURISDICTION AND VENUE

(11)    Venue is proper in this judicial district pursuant to *28 U.S.C. § 1391(b)* because a substantial portion of the events, omissions and wrong doings alleged in this complaint occurred within the District of Arizona.

(12)    Defendants are authorized to regularly do business in the District of Arizona.

(13)    This is an action that includes violations of the Truth-in-Lending Act (*TILA 15 U.S.C. §1601 et seq.*)

(14)    This is an action that includes violations of the Real Estate Settlement and Procedures Act (*RESPA 12 U.S.C. §2602*).

(15)    Plaintiff further invokes the pendent jurisdiction of this Court to consider claims

arising under Arizona state law.

(16)    The loan contracts between the Plaintiffs and Defendants were made and to be performed, and the obligations arose in the District of Arizona.

(17)    Jurisdiction is thus founded on **28 U.S.C. §1331** and **§1367**.

## INDUSTRY BACKGROUND

(18)    The State of Arizona is facing a foreclosure crisis rating in the top 4 in foreclosures in 2009 at 6.12%. See  CNN Money article at their website:

http://money.cnn.com/news/storysupplement/economy/foreclosures/index.html

(19)    Just in the State of Arizona, one (1) out of one hundred fifty-nine (159) homeowners received foreclosure notices during the month of September, 2010. Foreclosures in 2010 in the State of Arizona top 110,000.  See http://www.realtytrac.com/trendcenter/az-trend.html

(20)    There has always been an unspoken presumption of competency on behalf of the Defendants and others who have initiated foreclosure proceedings in the State of Arizona as Arizona courts have routinely upheld that Defendants are not required to "produce the note" to foreclose.

(21)    As the foreclosure rates continue to accelerate in the State of Arizona, Defendants and other leading lenders have initiated foreclosure proceedings without holding the necessary rights to the deed of trust and/or promissory note or without having the proper assignments to show proper chain of title.

(22)    In the past month, Defendants as well as other leading mortgage lenders have placed a hold on foreclosures in all fifty (50) states in order to 'evaluate errors' in court documents.  This has been presented in the media on numerous fronts including the Washington Post article:

http://www.chron.com/idsp/story.mpl/business/7228285.html and CNN Money article:

http://money.cnn.com/2010/10/08/real_estate/bank_america_50/index.htm

(23)    Defendants and other mortgage services are now under pressure to review much of the legal documentation submitted or relied upon in connection with these illegal foreclosure actions after employees and contractors admitted in sworn depositions that due to the tremendous volume, they did not take the time to read loan documents, much less check for their accuracy, See Id.

(24)    As just one of hundreds of examples, Renee Hertzler, a Bank of America executive, said in a deposition that she has signed as many as 8,000 foreclosure documents a month without

reviewing them. See Id.

(25)   Defendants have admitted that in all of their foreclosure cases, they foreclose with a complete disregard of whether or not they have met their burden.

(26)   Defendants have consistently, through their actions and/or inactions, acted fraudulently in initiating the continuing these foreclosure and eviction claims.

(27)   Defendants failures to adhere to the procedural requirements has directly and proximately placed Plaintiffs in imminent danger of losing two (2) of their properties with one (1) property having already been sold illegally at a foreclosure sale on October 7, 2010.

(28)   Defendants failures to adhere to the procedural requirements has directly and proximately caused severe and irreparable damage to the Plaintiffs credit scores.

## STATEMENT OF FACTS

## PROPERTY A – 491 S. DOUGLAS WASH ROAD ("OSR69")

(29)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(30)   Plaintiff entered into a real estate purchase agreement with Universal American Mortgage Company ("UAMC") on January 16, 2007.

(31)   Said contract consisted of a Promissory Note and a Deed of Trust signed on January 16, 2007 and recorded on January 30, 2007 in the records of Pima County, AZ. (Docket 12981, Page 7551, Sequence 20070201026).

(32)   UAMC was compensated from funds assessed to Plaintiff at closing as disclosed on the Housing and Urban  Development Form 1 ("HUD1") Settlement Statement, creating a duty of good faith and fair dealing between UAMC and Plaintiffs.  (Doc #17, EXHIBIT 1, pages 4,5,6)

(33)   UAMC, acting in violation of their fiduciary duty to Plaintiff, gave only partial disclosure to Plaintiff.

(34)   UAMC further miss-informed Plaintiff as to the availability of credit to Plaintiff by failing to advise Plaintiff that Plaintiff qualified for a less expensive loan product than the loan product proposed to the Plaintiffs.

(35)   Plaintiff, by engaging the services of duly licensed professionals, exercised due diligence to insure good faith and fair dealings concerning compliance with all laws, rules, and regulations concerning the note and associated lien document.

(36)   On the day of closing, Plaintiffs were provided with the HUD1 statement.

(37)   At closing, assessed fees as listed on the settlement statement were:

| | | |
|---|---|---:|
| 802 | Loan Discount | $1,755.00 |
| 801 | Loan Origination Fee | $1,755.00 |
| 804 | Doc Prep Fee | $325.00 |
| 805 | Verification Fee | $25.00 |
| 806 | Flood Determination Fee | $7.00 |
| 807 | Life of Loan Flood Chart | $5.00 |
| 808 | Application Fee | $315.00 |
| 809 | Tax Service Fee | $75.00 |
| 810 | Underwriting Fee | $325.00 |
| 901 | Interest from 1/30/07  to 2/1/07 @ $36.0618/day ( 2 days) | $72.12 |
| 903 | Hazard Insurance Premium | $486.72 |
| 1001 | Hazard Insurance | $121.68 |
| 1004 | County Property Taxes | $16.67 |
| 1101 | Settlement fee | $251.75 |
| 1103 | Shipping/Handling | $22.00 |
| 1104 | Wire Fee | $20.00 |
| 1105 | eDoc Fee | $25.00 |
| 1109 | Lender's Coverage | $373.10 |
| 1111 | Recording Service Charge | $25.00 |
| 1112 | Endorsement Fee | $50.00 |
| 1304 | Transfer Fee | $75.00 |
| 1305 | Working Capital | $60.00 |
| 1306 | Balance to 1st 1/4 HOA Dues | $41.54 |

(38)    At closing, UAMC failed to provide documentation to show that the above referenced fees were authorized by law, that the services billed for were necessary, that the amounts charged for said services were reasonable, and that they did not take an undisclosed markup on said fees.  The fees assessed on the settlement statement were added to the principal on the note and interest was charged to Plaintiff on said amounts.

(39)    Plaintiff provided to UAMC, at the time of the consummation of the Promissory Note, a document which established a lien against the property.  Said lien document specifically stated that it was intended to protect UAMC from loss if Plaintiffs failed to abide by the promises made in the Promissory Note.

(40)    Immediately upon Plaintiffs signing of the Promissory Note and Deed of Trust, UAMC traded the note to Countrywide Home Loans ("CHL") for consideration accepted.

(41)    Upon sale of the Promissory Note from UAMC to CHL, UAMC separated the Promissory Note and Deed of Trust by retaining possession of the Deed of Trust while transferring possession of the Promissory Note.  *(see **Landmark v. Kessler**)*.

(42)    The Promissory Note was subsequently sold repeatedly to other parties who failed to

properly register said sales with the Pima County Recorder's Office, thereby, obscuring the true holder of the Promissory Note and depriving Pima County of proper and rightful recording fees.

(43)   Greed has prevailed throughout the life of our contract as appropriate filing fees were fraudulently withheld from the Pima County Treasurer due to the willful act on the part of UAMC, CHL and all of the other 'pretend lenders', as they devised a scheme to fraudulently circumvent the proper assignments and paying of the county filing fees to simply make bigger profits and bonuses.

(44)   At some point unknown to Plaintiffs, BAC became the servicer of the Promissory Note.

(45)   Plaintiffs have checked the local Pima County Records and find no assignment from UAMC to CHL, BAC, BOA or to any other company and/or servicing agent.

(46)   Plaintiffs contracted with UAMC who is the real party in interest on the Promissory Note and Deed of Trust and who is the only entity which holds legal standing to foreclose on Plaintiffs property.

### PROPERTY B – 9151 E SHOWCASE LANE ("9151")

(47)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(48)   Plaintiff entered into a real estate purchase agreement with Quicken Home Loans ("QUICKEN") on January 22, 2009.

(49)   Said contract consisted of a Promissory Note and a Deed of Trust signed on January 22, 2009 and recorded on February 9, 2009 in the records of Pima County, AZ. (Docket 13491, Page 3366, Sequence 20090260674).

(50)   QUICKEN was compensated from funds assessed to Plaintiff at closing as disclosed on the Housing and Urban  Development Form 1 ("HUD1") Settlement Statement, creating a duty of good faith and fair dealing between QUICKEN and Plaintiffs. (Attached EXHIBIT 5)

(51)   QUICKEN, acting in violation of their fiduciary duty to Plaintiff, gave only partial disclosure to Plaintiff.

(52)   QUICKEN further miss-informed Plaintiff as to the availability of credit to Plaintiff by failing to advise Plaintiff that Plaintiff qualified for a less expensive loan product than the loan product proposed to the Plaintiffs.

(53)   Plaintiff, by engaging the services of duly licensed professionals, exercised due diligence to insure good faith and fair dealings concerning compliance with all laws, rules, and

| **Case No:  10-503**

regulations concerning the note and associated lien document.

(54)   On the day of closing, Plaintiffs were provided with the HUD1 statement.

(55)   At closing, assessed fees as listed on the settlement statement were:

| | | |
|---|---|---|
| 802 | Loan Discount | $6,250.63 |
| 803 | Appraisal | $325.00 |
| 804 | Credit Report | $8.55 |
| 805 | Flood Life of Loan Coverage | $5.00 |
| 806 | Flood Determination Fee | $10.50 |
| 807 | Underwriting Fee | $70.95 |
| 808 | Underwriting Fee | $424.05 |
| 809 | Processing Fee | $575.00 |
| 810 | TSI Appraisal Services | $80.00 |
| 901 | Interest from 1/27/09 to 2/1/09 @ $30.38/day | $151.90 |
| 902 | Mortgage Insurance Premium | $798.25 |
| 1001 | Hazard Insurance | $199.56 |
| 1004 | County Property Taxes | $2,151.94 |
| 1101 | Settlement fee | $265.00 |
| 1102 | Abstract Search | $150.00 |
| 1103 | Notary Fees | $125.00 |
| 1104 | Title Insurance | $466.73 |
| 1111 | Tax Certification Fee | $18.00 |
| 1112 | EPA Endorsement | $60.00 |
| 1113 | Addt'l Endorsement Fee | $60.00 |
| 1201 | Recording Fee | $21.00 |
| 1307 | Express Mail/Courier Fees | $45.00 |

(56)   At closing, QUICKEN failed to provide documentation to show that the above referenced fees were authorized by law, that the services billed for were necessary, that the amounts charged for said services were reasonable, and that they did not take an undisclosed markup on said fees.  The fees assessed on the settlement statement were added to the principal on the note and interest was charged to Plaintiff on said amounts.

(57)   Plaintiff provided to QUICKEN, at the time of the consummation of the Promissory Note, a document which established a lien against the property.  Said lien document specifically stated that it was intended to protect QUICKEN from loss if Plaintiffs failed to abide by the promises made in the Promissory Note.

(58)   Shortly after Plaintiffs signing of the Promissory Note and Deed of Trust, QUICKEN traded the note to CHASE for consideration accepted.

(59)   Upon sale of the Promissory Note from QUICKEN to CHASE,  QUICKEN

separated the Promissory Note and Deed of Trust by retaining possession of the Deed of Trust while transferring possession of the Promissory Note.  *(see Landmark v. Kessler)*.

(60)     The Promissory Note was subsequently sold repeatedly to other parties who failed to properly register said sales with the Pima County Recorder's Office, thereby, obscuring the true holder of the Promissory Note and depriving Pima County of proper and rightful recording fees.

(61)     Greed has prevailed throughout the life of our contract as appropriate filing fees were fraudulently withheld from the Pima County Treasurer due to the willful act on the part of QUICKEN, CHASE and all of the other 'pretend lenders', as they devised a scheme to fraudulently circumvent the proper assignments and paying of the county filing fees to simply make bigger profits and bonuses.

(62)     Plaintiffs have checked the local Pima County Records and find no assignment from QUICKEN to CHASE or to any other company and/or servicing agent.

(63)     Plaintiffs contracted with QUICKEN who is the real party in interest on the Promissory Note and Deed of Trust and who is the only entity which holds legal standing to foreclose on Plaintiffs property.

### PROPERTY C – 7922 S CLARKSON COURT ("VMT133")

(64)     Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(65)     Plaintiff entered into a real estate purchase agreement with Universal American Mortgage Company ("UAMC") on January 2, 2007.

(66)     Said contract consisted of a Promissory Note and a Deed of Trust signed on January 2, 2007 and recorded on January 8, 2007 in the records of Pima County, AZ. (Docket 12966, Page 3332, Sequence 20070050717).

(67)     UAMC was compensated from funds assessed to Plaintiff at closing as disclosed on the Housing and Urban  Development Form 1 ("HUD1") Settlement Statement, creating a duty of good faith and fair dealing between UAMC and Plaintiffs. (Doc #17, EXHIBIT 1, pages 1,2,3)

(68)     UAMC, acting in violation of their fiduciary duty to Plaintiff, gave only partial disclosure to Plaintiff.

(69)     UAMC further miss-informed Plaintiff as to the availability of credit to Plaintiff by failing to advise Plaintiff that Plaintiff qualified for a less expensive loan product than the loan product proposed to the Plaintiffs.

(70)     Plaintiff, by engaging the services of duly licensed professionals, exercised due

Amended Complaint | Case No: 10-503

diligence to insure good faith and fair dealings concerning compliance with all laws, rules, and regulations concerning the note and associated lien document.

(71)   On the day of closing, Plaintiffs were provided with the HUD1 statement.

(72)   At closing, assessed fees as listed on the settlement statement were:

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $1,777.00 |
| 802 | Loan Discount | $1,777.00 |
| 803 | Appraisal | $300.00 |
| 804 | Credit Report | $12.00 |
| 808 | Tax Service Fee | $73.00 |
| 809 | Doc Prep Fee | $325.00 |
| 810 | Underwriting Fee | $325.00 |
| 811 | Flood Determination Fee | $7.00 |
| 812 | Life of Loan Flood Cert | $5.00 |
| 901 | Interest from 1/8/07to 2/1/07 @ $36.513/day | $876.33 |
| 903 | Hazard Insurance Premium | $397.44 |
| 1001 | Hazard Insurance | $99.36 |
| 1004 | County Property Taxes | $16.67 |
| 1101 | Settlement fee | $329.00 |
| 1104 | Title Endorsement | $50.00 |
| 1105 | Wire Fee | $20.00 |
| 1106 | eDocFee | $25.00 |
| 1107 | Courier Fee | $22.50 |
| 1109 | Lenders Coverage | $533.00 |
| 1111 | Recording Service Charge | $48.00 |
| 1304 | Final Inspection Fee | $50.00 |
| 1305 | Transfer Fee | $75.00 |
| 1306 | Capital Reserves | $75.00 |
| 1307 | Working Capital | $75.00 |
| 1308 | Bal of 1st 1/4 HOA Dues | $70.56 |

(73)   At closing, UAMC failed to provide documentation to show that the above referenced fees were authorized by law, that the services billed for were necessary, that the amounts charged for said services were reasonable, and that they did not take an undisclosed markup on said fees.  The fees assessed on the settlement statement were added to the principal on the note and interest was charged to Plaintiff on said amounts.

(74)   Plaintiff provided to UAMC, at the time of the consummation of the Promissory Note, a document which established a lien against the property.  Said lien document specifically stated that it was intended to protect UAMC from loss if Plaintiffs failed to abide by the promises made in the Promissory Note.

**Case No: 10-503**

(75)   Immediately upon Plaintiffs signing of the Promissory Note and Deed of Trust, UAMC traded the note to Countrywide Home Loans ("CHL") for consideration accepted.

(76)   Upon sale of the Promissory Note from UAMC to CHL, UAMC separated the Promissory Note and Deed of Trust by retaining possession of the Deed of Trust while transferring possession of the Promissory Note. *(see Landmark v. Kessler)*.

(77)   The Promissory Note was subsequently sold repeatedly to other parties who failed to properly register said sales with the Pima County Recorder's Office, thereby, obscuring the true holder of the Promissory Note and depriving Pima County of the proper and rightful filing fees.

(78)   Greed has prevailed throughout the life of our contract as appropriate filing fees were fraudulently withheld from the Pima County Treasurer due to the willful act on the part of UAMC, CHL and all of the other 'pretend lenders', as they devised a scheme to fraudulently circumvent the proper assignments and paying of the county filing fees to simply make bigger profits and bonuses.

(79)   At some point unknown to Plaintiffs, BAC became the servicer of the Promissory Note.

(80)   Plaintiffs have checked the local Pima County Records and find no assignment from UAMC to CHL, BAC, BOA or to any other company and/or servicing agent.

(81)   Plaintiffs contracted with UAMC who is the real party in interest on the Promissory Note and Deed of Trust and who is the only entity which holds legal standing to foreclose on Plaintiffs property.

**Defendants Routinely Act in Bad Faith and in Breach of Contractual Obligations During the Course of their Negotiations with Plaintiffs**

(82)   Defendants BOA and BAC have, on multiple occasions, misled and misinformed Plaintiffs with reference to a temporary trial loan modification on VMT133 and a short sale agreement on OSR69.

(83)   Defendant CHASE refused to return monies rightfully due to the Plaintiffs as a result of an accidental double payment of $1,622 paid twice on February 3, 2010.

(84)   When Defendants BOA and BAC enter into loan modification or short sale discussions with the Plaintiffs, they had a duty to be truthful with Plaintiffs about the circumstances of the agreements, by virtue of their positions as a fiduciary.

(85)   The facts that Defendants have concealed, and the misrepresentations that were

made are material to the transactions at hand.

(86)    Said omissions and misrepresentations were made with the knowledge of their falsity and with utter disregard and recklessness as to whether they were true or false and with all intent of misleading Plaintiffs into relying upon them.

(87)    Said omissions and misrepresentations has already cost Plaintiff the loss of their primary residence 9151, by the illegal foreclosure sale which was held on October 7, 2010 and has directly and proximately placed Plaintiffs in imminent danger of losing their other two (2) properties, OSR69 and VMT133.

(88)    Said omissions and misrepresentations have directly and proximately caused severe and irreparable damage to the Plaintiffs credit scores.

(89)    Compliance with the technical requirements of the law is essential in protecting the rights of homeowners from being foreclosed on.

(90)    Compliance with these requirements is not onerous to the Defendants and any so called 'burdens' are far outweighed by the interest of justice.

(91)    This willful disregard of knowledge, facts, and statutory law has caused severe distress and other damages to Plaintiffs.

## VIOLATIONS ALLEGED

(92)    Plaintiffs are prepared to produce evidence of fraudulent intent and specific violations of standing law too numerous to include in the complaint as Plaintiffs are limited to a certain number of pages.  After discovery, at trial, Plaintiffs are prepared to produce further proof of the allegations made herein.

## FIRST COUNT - FRAUD

(93)    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(94)    The facts that Defendants concealed, and the misrepresentations that were made are material to the transactions at hand.

(95)    Said omissions and misrepresentations were made with the knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false and with the intent of misleading Plaintiffs into relying upon them.

(96)    Defendants made proactive statements of fact to Plaintiff giving partial disclosure Defendants intended that Plaintiff would rely on in making a decision to enter into an express contract for the purchase of said properties.

(97)     By said proactive statements intended as partial disclosure, Defendants invoked a duty to full disclosure.  Defendants failed to give full disclosure to Plaintiff.

(98)     Plaintiff did not have equal access to, or equal opportunity to discover information upon which Defendants gave partial disclosure.

(99)     Plaintiff relied on the disclosure given by Defendants as being complete.  Plaintiff was harmed by the lack of full disclosure by Defendants.

(100)   The elements of a fraudulent omissions claim are: (1) concealment or nondisclosure of a material fact, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). See also Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996). [*48]*

(101)   While certain fraud claims are subject to Fed. R. Civ. P. 9(b), Plaintiffs need only plead their claim pursuant to Fed. R. Civ. P. 8(a). A fraud by omission claim does not need to meet the requirements of Rule 9(b) because it is based on the ***absence*** of representations, rather than on representations that were made and can be detailed in a pleading. *See, e.g., Falk v. GMC, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)*

(102)   Plaintiffs are only required to state the factual basis for their Fraud claim pursuant to Rule 9(b). To meet the requisite level of specificity, Rule 9(b) only requires identification of circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent activities, such that a defendant can prepare adequate answer to allegations. *(Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).)*

(103)   A pleading is sufficient under Rule 9(b) if it identifies circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *(Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993),* quoting *Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977).)* However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary matter. *(Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).* Rule 9(b) may be relaxed with respect to matters within opposing party's knowledge.  *(Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)*

(104)   In cases where fraud was conducted over several years, a plaintiff is not required to allege each date of each defendant's fraudulent conduct since such requirement would defeat the purpose of Rule 8 requiring that pleading be short, plain, and in concise statements.

(105)   The reliance of Plaintiffs on the statements and omissions that were made by

Defendants are justifiable, given the circumstances, and said reliance resulted in injury to the Plaintiffs, as this instant lawsuit will attest.

(106)   When Defendants sign foreclosure documents and when Defendants enter into modification discussions with the Plaintiffs as outlined above, they have a duty to be truthful with the Plaintiffs about the consequences and circumstances of the loan, by virtue of being loan officers and by virtue of their positions as a fiduciary.

(107)   Plaintiff is informed and believes that Defendants acted in concert with others in promulgating false representations to cause Plaintiff to enter into the loans without knowledge or understanding of the terms thereof.

(108)   At all times, Defendants have acted with a conscious, willful and malicious disregard for the rights and safety of Plaintiffs, knowing that there was a great probability that their actions would cause harm to the Plaintiffs.

(109)   Because of the actions and omissions outlined above, Defendants have committed fraud upon the Plaintiffs.

(110)   Arizona and other states throughout the nation have enacted Consumer Fraud Laws to provide consumers with a private right of action under these statutes and to protect consumers. Arizona Attorney General Terry Goddard lists fraud on his website http://www.azag.gov/consumer/

> *"as any deception, false statement, false pretense, false promise or misrepresentation made by a seller or advertiser of merchandise. In addition, concealment, suppression or failure to disclose a material fact may be consumer fraud if it is done with the intent that others rely on such concealment, suppression or nondisclosure."*

(111)   A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *(Podolsky v. First Healthcare Corp.., 50 Cal. App. 4th 632, 647 (1996).)*

(112)   A practice is fraudulent if the members of the public are likely to be deceived by the practice. (*Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000)*.

(113)   Plaintiffs have suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial, for OSR69 in excess of $913,554.30, for 9151 in excess of $358,119.97, and for VMT133 in excess of $924,546.81.

(114)   Plaintiffs have suffered damages as a direct and proximate result of the actions of the Defendants.

Amended Complaint                                    Case No: 10-503

## SECOND COUNT – VIOLATION OF A.R.S. § 33, CHAPTER 4, ARTICLES 1 & 2
## AND CHAPTER 6.1, ARTICLE 1

(115)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(116)   Plaintiffs are homeowners who are involved in foreclosure proceedings initiated by the Defendants.

(117)   In violation of these statutes, Defendants have affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts with the intent that others rely upon such concealment and deception.

(118)   The conduct of Defendants, as set forth above, constitutes unfair, fraudulent and deceptive trade practices prohibited under Arizona law and the consumer fraud act.

(119)   As a result of Defendants unfair, fraudulent and deceptive practices, Plaintiffs have suffered an ascertainable loss of monies and/or property and/or value.

(120)   Defendants seek to foreclosure upon OSR69 and VMT133 properties which are "residential mortgages" as defined by the Arizona law and therefore Plaintiffs are entitled to the protections and requirements set forth in the Arizona Foreclosure Laws.

(121)   Defendants have already foreclosed upon property 9151, Plaintiffs primary residence,  during the course of this case, and have illegally sold the property at a Trustee sale on October 7, 2010 and served an illegal eviction notice to Plaintiffs.

(122)   Defendants have failed to comply with the Arizona laws and statutes by failing to properly execute foreclosure documents required to foreclose.

(123)   Defendants have failed to comply with the Arizona laws and statues by failing to properly execute proper procedures required to hold a Trustee Sale.

(124)   Such callous disregard for the procedural safeguards of a foreclosure proceeding has harmed the Plaintiffs.

(125)   Plaintiffs have suffered damages as a direct and proximate result of the actions of the Defendants.

## THIRD COUNT  - BREACH OF CONTRACT

(126)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(127)   Defendants drafted and entered into individual contract with the Plantiffs

(128)   Defendants violated these contracts.

(129)   The actions of Defendants give rise to the claim of breach of contract.

Amended Complaint

(130)   Plaintiffs have suffered damages as a direct and proximate result of the actions of the Defendants.

## FOURTH COUNT – BREACH OF CONTRACT OF
## GOOD FAITH AND FAIR DEALING

(131)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein

(132)   Defendants acted at all times relevant with bad motives or intentions and contrary to the reasonable expectations of the Plaintiffs.

(133)   "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [*15]  Rest.2d Contracts § 205.*

(134)   A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917,*

(135)   A fiduciary must protect the rights, monetary interest and make decisions in the best interest of the person who it is representing.

(136)   Plaintiffs relied, to their detriment, on misleading assertions and conduct of the Defendants.

(137)   The conduct of Defendants has deprived Plaintiffs of the benefit of the bargain originally intended by the parties.

(138)   Under the Covenant of Good Faith and Fair Dealing, neither party is allowed to do anything which will injure the rights of the other party to receive benefits of the agreement. (*Andrews v. Mobile Aire Estates 125 Cal. App. 4th 578, 589 (2005),* quoting *Gruenberg v Aetna Ins. Co. 9 Cal. 3d 566, 573 (1973).*)

(139)   In the failure to dutifully perform the terms of the agreements detailed above, Defendants have violated the duty of good faith and fair dealing that arises in all contracts as more fully set forth in the factual allegations above.

(140)   Under the law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. (*Marsu, B.V. v Walt Disney Co., 185 F 3d. 932, 937 (9th Cir. 1999),* quoting *Carma Developers, Inc v Marathon Dev. Cal., Inc., 2 Cal 4th 342, 371 (1992).*) Plaintiff sufficiently placed Defendants on notice of Plaintiff's allegations.

(141)   Plaintiffs have suffered damages as a direct and proximate result of the actions of Defendants.

## FIFTH COUNT – BREACH OF IMPLIED CONTRACT

(142)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(143)   Defendants made various oral agreements and representations to Plaintiffs.

(144)   Defendants violated these and other oral representations.

(145)   The actions of Defendants give rise to the claim of breach of implied contract.

(146)   Plaintiffs have suffered damages as a direct and proximate result of the actions of the Defendants.

## SIXTH COUNT – BREACH OF FIDUCIARY DUTY

(147)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(148)   Defendants owed a fiduciary duty to the Plaintiffs to act primarily for their benefit, to act with proper care and diligence, and not to make a personal profit at the expense of the Plaintiff.

(149)   Defendants owed a duty of care under TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as "yield spread premiums" to mortgage Agents and loan officers.

(150)   Defendants knew or in the exercise of reasonable care should have known, that the loan transactions involving Plaintiff and other persons similarly situated were defective, unlawful, in violation of federal and state laws and regulations, and would subject Plaintiff to economic and non-economic harm and other detriment.

## SEVENTH COUNT –  VIOLATIONS OF TRUTH IN LENDING

(151)   Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(152)   The transactions referenced herein were subject to the Plaintiff's right of rescission as described by *15 U.S.C. § 1635*(a) and Regulation **Z § 226.23 (12 C.F.R. § 226.23).**

(153)   Defendants violated **15 U.S.C. *§ 1635*(a)** and Regulation **Z § 226.23(b)** with regards to the purported Notice of Right to Cancel.

(154)   The Notice of Right to Cancel documentation was not provided to Plaintiff or if furnished to Plaintiff it failed to 1) correctly identify the transaction;  2) clearly and conspicuously disclose the Plaintiff's right to rescind the transaction three days after delivery

of all required disclosures; 3) clearly and conspicuously disclose how to exercise the right to rescind the transaction, with a form for that purpose; 4) clearly and conspicuously disclose the effects of rescission; and 5) clearly and conspicuously disclose the date the rescission period expired.

(155)   Plaintiff believes that Defendants violated TILA at the time of origination because, among other things, multiple good faith estimates ("GFE") were used to mislead and confuse Plaintiffs about the actual terms of the Promissory Notes.

(156)   Plaintiffs believe that Defendants violated TILA at the time of origination because over $10,000 in yield spread premium ("YSP") along with additional amounts paid outside closing ("POC").

(157)   Plaintiff is informed and believes that Defendants violation of law rendered the credit transactions null and void, invalidates Defendants claimed interest in the Plaintiffs properties and entitles Plaintiff to damages as proven at trial.

(158)   Plaintiffs contend and believe that TILA damages and rescission claims are not time barred.  It is a well-established rule that the doctrine of equitable tolling suspends the statute of limitations until Plaintiffs discover or had reasonable opportunity to discover the fraud or the non-disclosures that form the basis of a TILA action. (*King v. California, 784 F.2d 910, 915 (9th Cir. 1986)*; see also, (*Eubanks v. Liberty Mortgage Banking Ltd., 976 F. Supp. 171 (9th Cir. 2003)*), noting that TILA claims are subject to equitable tolling in instances of fraud.

(159)   District courts have discretion to adjust the limitations period. (See, *Pelayo v. Home Capital Funding, 2009 U.S. Dist. LEXIS 44453, *14-16 (S.D. Cal. May 22, 2009)*.) "The motion [to dismiss] should be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" (*Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008)*, [*19] citing *Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987)*; see also, *Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006)*) holding that it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss if equitable tolling is at issue, given that the applicability of equitable tolling depends on matter outside of the pleadings and Court's review is limited to the complaint.

(160)   The issue of equitable tolling must be considered when "the complaint,

liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." (Id., citing *Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993)*

(161)   Plaintiffs have pled that facts surrounding their loan transactions were purposefully hidden and continue to be hidden to this day.

(162)   In California, the statute of limitation runs from actual discovery. (See, *Katz v. Bank of California, 640 F.2d 1024, 1025 (9th Cir. 1981)* citing (*NLRB v. Don Burgess Constr. Corp., 596 F.2d 378, 382-383 (9th Cir. 1979)*).  TILA does not permit constructive disclosure of terms, but specifically provides for actual, express disclosures to be made to the borrower by the creditor prior to and upon closing of the loan. ( *15 U.S.C. § 1601* et seq.)

(163)   Defendants failed to provide the requisite TILA disclosures to the Plaintiffs at the inception of the loan.

(164)   Plaintiff, by engaging licensed professionals to assist Plaintiff in the procurement of the note exercised due diligence.  It was only after news reports of predatory lending practices came to the attention of Plaintiff that Plaintiff discovered concealment of TILA violations by Defendants within the past year, when Plaintiff engaged the services of a professional to examine the loan for improprieties.

(165)   Plaintiff's allegations adequately state the applicability of the equitable tolling doctrine. Thus, Plaintiff's TILA claims are not barred.  (*2009 U.S. Dist. Ct. Motions 875682; 2010 U.S. Dist. Ct. Motions LEXIS 7191).*

## SUFFICIENCY OF PLEADING

(166)   A complaint should not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief". (*Housley v. U.S. (9th Cir. Nev. 1994 35 F.3d 400, 401)*

(167)   "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiff." (*Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996)*).

(168)   Plaintiff has sufficiently pled that relief can be granted on each and every one of the complaint's causes of action.

(169)   The Complaint includes short, plain and precise statements of the basis for relief in accordance with Fed. Rule Civ. Proc. 8(a).

(170)   The Complaint contains cognizable legal theories, sufficient facts to support cognizable

legal theories, and seeks remedies to which Plaintiffs are entitled.  (*Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986)*).

(171)   "The legal conclusions in the complaint can and should be drawn from the facts alleged, and, in turn, the court should accept them as such." (*Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir, 1994)*).

(172)   Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of their claim entitling them to relief. (*Housley v. U.S. (9th Cir, Nev. 1994) 35 F.3d 400, 401*). Therefore, relief as requested herein should be granted.

## DEMAND FOR TRIAL BY JURY

(173)   Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

(174)   Plaintiffs hereby make demand that Defendants disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

(175)   If so, please attach a copy of each, or in the alternative,  state under oath and certification: (A) policy number;  (B) name and address of insurer;  (C) inception and expiration date;  (D) names and addresses of all persons insured thereunder;  (E) personal injury limits;  (F) property damage limits and  (G) medical payment limits.

**WHEREFORE**, Plaintiffs seek a judgment against the named Defendants, and each of them, as follows:

●For rescission of the loan contract and restitution by Defendants to Plaintiff according to proof at trial;

●For disgorgement of all amounts wrongfully acquired by Defendants according to proof at trial;

●For actual monetary damages in the amount of $913,554.30 for OSR69, $358,119.97 for 9151 and $924,546.81 for VMT133;

Amended Complaint | Case No: 10-503

●For pain and suffering due to extreme mental anguish in an amount to be determined at trial;

●For pre-judgment and post-judgment interest according to proof at trial;

●For punitive damages according to proof at trial in an amount equal to $2,740,662.90 for OSR69, $1,074,359.91 for 9151 and $2,773,640.43 for VMT133; and

●For such other relief as the Court deems just and proper.


## VERIFICATION


We, Michael Benson Sparlin & Sharon Jeanette Sparlin, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of our knowledge.


**MICHAEL BENSON SPARLIN**
9151 E Showcase Lane
Tucson, Az 85749

**SHARON JEANETTE SPARLIN**
9151 E Showcase Lane
Tucson, AZ 85749

The persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that they executed the same in their authorized capacity and that by their signatures on this instrument who is the person who executed this instrument. I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.



**NOTARY PUBLIC IN AND FOR
THE STATE OF ARIZIONA**

**Notary Seal**

Amended Complaint | Case No:  10-503

1

2 ## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and exact copy of the above has been furnished by U.S.
3 Mail on this _____27th_____ day of October, 2010 to the following:

4

5 MAYNARD CRONIN ERICKSON
CURRAN & REITER, P.L.C.
6 Douglas C Erickson, #012130
Jennifer A Reiter, #017502
7 3200 North Central Avenue, Ste 1800
Phoenix, Arizona 85012
8      Attorneys for Defendants Chase Home Finance, LLC and JPMorgan Chase & Co

9

BRYAN CAVE LLP
10 Robert W Shely #014261
Coree E Neumeyer #025787
11 Michael B Dvoren #027386
Two North Central Avenue, Ste 2200
12 Phoenix, Arizona  85004-4406
     Attorneys for Defendants BAC Home Loans Servicing, LP and Bank of America, NA
13

14

15

16 _____
SHARON JEANETTE SPARLIN
17

18

19

20

21

22

23

24

25

26

27

28

Optional Form for
Transactions without Sellers                    and Urban Development                                                OMB Approval No. 2502-0491

| Name of Borrower: | | Name & Address of Lender: | |
|---|---|---|---|
| Sharon J. Spartin, Michael B. Spartin | | Quicken Loans Inc. ( Lender ) | |
| | | 20555 Victor Parkway | |
| 9151 E Showcase Ln | | Livonia, MI 48152 | *EXHIBIT 5* |
| Tucson, AZ 85749 | | | |

| Property Location: (if different from above) | | Settlement Agent: | |
|---|---|---|---|
| 9151 E Showcase Ln | | Title Source, Inc. | |
| Tucson, AZ 85749 | | Place of Settlement: | |
| | | 9151 E Showcase Ln, Tucson, AZ 85749 | |

| Loan Number: | Settlement Date: | 01/22/09 | |
|---|---|---|---|
| 3218892703 | Disbursement Date: | | 01/27/09 |

| L. Settlement Charges | | M. Disbursements to Others | |
|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 1501. WACHOVIA MORTGAGE, FSB | $223,501.35 |
| 801. Loan Origination Fee    % to: Quicken Loans Inc. | | 1502. BANK OF AMERICA | $9,294.00 |
| 802. Loan Discount Fee  2.500 % to: Quicken Loans Inc. | $6,250.63 | | |
| 803. Appraisal Fee to: MARTELL AND ASSOCIATES | | | |
| $325.00 POC | | | |
| 804. Credit Report to: CredStar | | | |
| $8.55 POC | | | |
| 807. Flood Life of Loan Coverage to: First American Flood | | | |
| $5.00 POC | | | |
| 808. Flood Determination Fee to: First American Flood Data | | | |
| $10.50 POC | | | |
| 809. Underwriting Fee to: Quicken Loans Inc. | | | |
| $70.95 POC | $424.05 | | |
| 810. Processing Fee to: Quicken Loans Inc. | $575.00 | | |
| 888. TSI Appraisal Services | | | |
| $80.00 POC | | | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Int. from 01/27/2009 to 02/01/2009 | | | |
| @ $  30.38 per day for 5 days | $151.90 | | |
| 903. Homeowners Insurance Premium for 1 year to Farmers Insurance | 798.25 | | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance   3 months @    $66.52 per month | $199.56 | | |
| 1004. County Taxes   7 months @    $307.42 per month | $2,151.94 | | |
| 1008. Aggregate Acct. Adjustment | $-133.06 | | |
| 1100. Title Charges Title Commitment# 03057083 | | | |
| 1101. Settlement/Closing Fee to: Title Source Inc - Notary | 265.00 | | |
| 1102. Abstract or Title Search to: TITLE SOURCE, INC | $150.00 | | |
| 1106. Notary Fees to: | $125.00 | | |
| 1108. Title Insurance to: TITLE SOURCE, INC. | $466.73 | | |
| Based on a Loan Amount of $250,025.00. | | | |
| 1112. EPA Endorsement to: TITLE SOURCE, INC. | $60.00 | | |
| 1113. Add'l Endorsement Fee to: Title Source Inc - Notary | $80.00 | | |
| 1116. Tax Certification Fee to: | $18.00 | | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201b. Recording Mortgage Fee | $21.00 | 1520. TOTAL DISBURSED (enter on line 1603) | 232,795.35 |
| 1300. Additional Settlement Charges | | | |
| 1307. Express Mail/Courier Fees | $45.00 | | |
| 1400. Total Settlement Charges | | | |
| (enter on line 1602) | $11,629.00 | | |
| | | | |
| | | | |
| | | | |
| | | N. NET SETTLEMENT | |
| | | 1600. Loan Amount | $250,025.00 |
| | | | |
| | | 1601. Plus Deposit Previously Received | $0.00 |
| | | | |
| | | 1602. Minus Total Settlement Charges | $11,629.00 |
| | | (line 1400)      $500.00  POC | |
| | | 1603. Minus Total Disbursements to Others | $232,795.35 |
| | | (line 1520) | |
| Fees showing with the label 'POC' will be paid outside of closing. | | 1604. Equals Cash to Borrower | $5,600.65 |
| | | (after expiration of any applicable | |
| | | rescission period required by law) | |

Borrower(s) Signatures:

*Sharon J. Spartin* _____ 01/22/2009          *Michael B. Spartin* _____ 01/22/2009
Sharon J. Spartin                    Date                    Michael B. Spartin                    Date

_____                      Date                    _____                      Date