Case 4:10-cv-00503-FRZ  Document 38-2  Filed 12/29/10  Page 1 of 67

*EXHIBIT 7*

*CASE #10-503*

# Texas Secretary of State
## Hope Andrade

**UCC** | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13186910 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | February 28, 2000 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32036165739 | **FEIN:** | |
| **Duration:** | Perpetual | | |

| | |
|---|---|
| **Name:** | BAC Home Loans Servicing, LP |
| **Address:** | 6400 Legacy Drive |
| | Plano, TX 75024 USA |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| CT Corporation System | 350 N. St. Paul St., Ste. 2900 Dallas, TX 75201-4234 USA | |

[Order] [Return to Search]

Instructions:
● To place an order for additional information about a filing press the 'Order' button.





*EXHIBIT F*
*CASE #10-503*

# Texas Secretary of State
## Hope Andrade

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13186910 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | February 28, 2000 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32036165739 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | BAC Home Loans Servicing, LP | | |
| **Address:** | 6400 Legacy Drive | | |
| | Plano, TX 75024 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Name Status | Name Type | Name Inactive Date | Consent Filing # |
|---|---|---|---|---|
| COUNTRYWIDE HOME LOANS SERVICING LP | Prior | Legal | April 21, 2009 | 0 |
| COUNTRYWIDE I HOME LOANS LP | Prior | Legal | April 25, 2000 | |
| BAC Home Loans Servicing, LP | In use | Legal | | 0 |

[ Order ]    [ Return to Search ]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

Case 4.10-cv-00503-FR2   Document 38-2   Filed 12/29/10   Page 3 of 67

*EXHIBIT 3*

*CASE #10-503*



**Home Loans**

Business Portal
# Terms & Conditions of Use

PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY. BY ACCESSING OR USING THIS WEB SITE (HEREINAFTER "THE SITE"), YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS BELOW. IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS BELOW, DO NOT ACCESS OR USE THE SITE, OR ANY PAGES OR INFORMATION IN THE SITE.

You may print these Terms and Conditions before you access or use the Site. If you do not have a printer, you may call us for a free copy of these Terms and Conditions. These Terms and Conditions will always be available for your review under the "Terms and Conditions" link found at the log-in screen and at the bottom of many pages of the Site.

**A. Conditions:**

Your permission to access and use the Site and the information contained therein is granted only on the following conditions:

- You are an authorized BAC Home Loans Servicing, LP service provider in good standing to access the Site and the information contained therein;
- You will not copy or post the information from the Site on any network computer or broadcast in any media; and
- You will make no modifications to the Site or any information therein.
- You agree to and will comply with the Terms and Conditions stated below.

**B. What these Terms and Conditions Cover:**

These Terms and Conditions govern the use and access to information provided through the Site. Information provided through the Site may also be governed by separate agreements with you. You understand that the terms of any such other agreements will remain in full force and effect. In these Terms and Conditions, the words "BAC Home Loans Servicing, LP", "we", "us", and "our" mean BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., and any company affiliated with BAC Home Loans Servicing, LP.

**C. Accepting these Terms and Conditions:**

You understand that by accessing or using the Site, or the information available through the Site, you have agreed to these Terms and Conditions.

**D. Changes in Terms:**

We may modify these Terms and Conditions at any time. Such modifications will apply to you and will be effective immediately upon the posting to the Site. You understand that by using or accessing the Site or the information therein after a change becomes effective, you have agreed to it. We will not provide you with individual notice of any change. You should click on the "Terms and Conditions" link at the log-in screen or at the bottom of many pages of the Site from time to time to review the current Terms and Conditions because they are binding on you.

**E. Termination:**

We may terminate your access to the Site for any reason, at any time, with or without notice to you. If you terminate your agreement to these Terms and Conditions, you may no longer use or access the Site. All representations and warranties made herein and the parties' rights and obligations hereunder, not pertaining to the continued use of the Site, shall remain in full force and effect notwithstanding any termination of your agreement to these Terms and Conditions.

**F. Limitations of Liability:**

Risks of Use. Access to the Site may be limited or unavailable during periods of peak demand, system upgrades, maintenance or for other reasons. If access to the Site is unavailable or delayed at any time, you agree to use alternative means to obtain information from us, such as contacting a BAC Home Loans Servicing, LP representative. We will not be liable to you if you are unable to access information through the Site.

Limitation of Damages. IN NO EVENT WILL WE BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL OR INDIRECT DAMAGES. THIS INCLUDES, BUT IS NOT LIMITED TO, DAMAGES THAT MAY RESULT FROM THE USE,

*EXHIBIT H*

*CASE #10-503*

**Alternative Loan Trust 2007-HY4 Mortgage pass-thru Certificates, Series 2007-HY4**
**Excerpts from Prospectus/Pooling and Servicing Agreement**
**Case #10-503**

## General

CWALT, Inc. (the "*depositor*") will purchase the mortgage loans in each loan group (the "*Group 1 Mortgage Loans*" and the "*Group 2 Mortgage Loans*", respectively, and together referred to as the "*Mortgage Loans*") in the mortgage pool from Countrywide Home Loans, Inc. ("*Countrywide Home Loans*") and one or more other sellers affiliated with Countrywide Financial Corporation (each of which is referred to as a "*seller*" and together they are referred to as the "*sellers*") pursuant to a pooling and servicing agreement, dated as of <u>January 1, 2007</u> (the "*pooling and servicing agreement*"), among the depositor, the sellers, Countrywide Home Loans Servicing LP, as master servicer (the "*master servicer*"), and The Bank of New York, as trustee (the "*trustee*"), and will cause the Mortgage Loans to be assigned to the trustee for the benefit of the holders of the certificates. The mortgage loans that are purchased by the depositor and assigned to the trustee on the closing date and that are described in the tables in Annex A are referred to as the Initial Mortgage Loans. The Initial Mortgage Loans, together with any other mortgage loans that are purchased by the depositor and assigned to the trustee on the closing date, are referred to as the Closing Date Mortgage Loans. Each seller, other than Countrywide Home Loans, will be a special purpose entity established by Countrywide Financial Corporation or one or more of its subsidiaries, which will sell mortgage loans previously acquired from Countrywide Home Loans.

## Assignment of the Mortgage Loans

Pursuant to the Pooling and Servicing Agreement, <u>on the closing date</u>, the Depositor will sell, transfer, assign, set over and otherwise convey without recourse to the Trustee in trust for the benefit of the certificateholders all right, title and interest of the Depositor in and to each Mortgage Loan and all right, title and interest in and to all other assets included in the applicable Alternative Loan Trust, including all principal and interest received on or with respect to the Mortgage Loans, but not any principal and interest due on or before the later of the day of the month in which the certificates are issued an the date of origination for that Mortgage Loan (such date, the "*Cut-off Date*").

In connection with the transfer and assignment of a Mortgage Loan, the Depositor will deliver or cause to be delivered to the Trustee, or a custodian for the Trustee, the mortgage file, which contains among other things, the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse, except that the Depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost, the original instrument creating a first lien on the related mortgaged property <u>with evidence of recording indicated thereon, an assignment in recordable form of the mortgage</u>, the title policy with respect to the related mortgaged property and, if applicable, all recorded intervening assignments of the mortgage and any riders or modifications to the mortgage note and mortgage (except for any documents not returned from the public recording office, which will be delivered to the Trustee as soon as the same is available to the Depositor). With respect to up to 50% of the Mortgage Loans, the Depositor may deliver all or a portion of each related mortgage file to the Trustee not later than thirty days after the closing date. Assignments of the mortgage loans to the Trustee (or

its nominee) <u>will be recorded in the appropriate public office for real property records</u>, except in states where in the opinion of counsel recording is not required to protect the Trustee's interests in the mortgage loan against the claim of any subsequent transferee or any successor to or creditor of the Depositor or any seller.

The Trustee will review each mortgage file relating to the Mortgage Loans within 90 days of the closing date (or promptly after the Trustee's receipt of any document permitted to be delivered after the closing date) and if any document in a mortgage file is found to be missing or defective in a material respect and Countrywide Home Loans and/or the related seller does not cure the defect within 90 days of notice of the defect from the Trustee (or within such longer period not to exceed 720 days after the closing date as provided in the Pooling and Servicing Agreement in the case of missing documents not returned from the public recording office), Countrywide Home Loans and/or the related seller will be obligated to repurchase the related mortgage loan from the issuing entity. Rather than repurchase the mortgage loan as provided above, Countrywide Home Loans and/or the related seller may remove the mortgage loan (referred to as a "***deleted mortgage loan***") from the issuing entity and substitute in its place another mortgage loan (referred to as a "***replacement mortgage loan***"); however, such a substitution is permitted only within two years of the closing date and may not be made unless an opinion of counsel is provided to the Trustee to the effect that such a substitution will not disqualify any REMIC or result in a prohibited transaction tax under the Code. Any replacement mortgage loan generally will, on the date of substitution, among other characteristics set forth in the Pooling and Servicing Agreement,

· have a principal balance, after deduction of all scheduled payments due in the month of substitution, not in excess of, and not less than 90% of, the Stated Principal Balance of the deleted mortgage loan (the amount of any shortfall to be deposited by the related seller in the Certificate Account and held for distribution to the certificateholders on the related distribution date (referred to as a "***Substitution Adjustment Amount***")),

· if the deleted mortgage loan is an adjustable rate mortgage loan, have a maximum mortgage rate no lower than, and not more than 1% per annum higher than the maximum mortgage rate of the deleted mortgage loan,

· if the deleted mortgage loan is an adjustable rate mortgage loan, have a minimum mortgage rate no lower than, and not more than 1% per annum higher than the minimum mortgage rate of the deleted mortgage loan,

· if the deleted mortgage loan is an adjustable rate mortgage loan, have the same mortgage index and intervals between interest rate adjustment dates as the deleted mortgage loan, an initial periodic rate cap and a subsequent periodic rate cap each not more than 1% per annum lower than that of the deleted mortgage loan, and a gross margin not more than 1% per annum higher or lower than that of the deleted mortgage loan,

· if the deleted loan is a negative amortization loan, have the same reset period, payment cap and payment reset provisions as the deleted mortgage loan,

· have a current mortgage rate not lower than, and not more than 1% per annum higher than that

of the deleted mortgage loan,
·have a loan-to-value ratio not higher than that of the deleted mortgage loan,

·have a remaining term to maturity not greater than (and not more than one year less than) that of the deleted mortgage loan, and

·comply with all of the representations and warranties set forth in the Pooling and Servicing Agreement as of the date of substitution.

This cure, repurchase or substitution obligation constitutes <u>the sole remedy available to certificateholders or the Trustee for omission of, or a material defect in, a mortgage loan document.</u>

Notwithstanding the foregoing, in lieu of providing the duly executed assignment of the mortgage to the Trustee and the original recorded assignment or assignments of the mortgage together with all interim recorded assignments of that mortgage, above, the Depositor may at its discretion provide evidence that the related mortgage is held through the MERS® System. In addition, the mortgages for some or all of the mortgage loans held by the issuing entity that are not already held through the MERS® System may, at the discretion of the Master Servicer, in the future be held through the MERS® System. For any mortgage held through the MERS® System, the mortgage is recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, as nominee for the owner of the mortgage loan, and subsequent assignments of the mortgage were, or in the future may be, at the discretion of the Master Servicer, registered electronically through the MERS® System. For each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the Trustee, and does not have any interest in the mortgage loan.

**Description of the Pooling and Servicing Agreement**
The following is a description of certain provisions of the Pooling and Servicing Agreement that are not described elsewhere in this free writing prospectus.

**Events of Default; Remedies**
In addition to the events of default described in the prospectus, an event of default will consist of the failure by the master servicer to reimburse, in full, the trustee not later than 6:00 p.m., New York City time, on the business day following the related distribution date for any advance made by the trustee together with accrued and unpaid interest. If the master servicer fails to make the required reimbursement, so long as the event of default has not been remedied, the trustee, but not certificateholders, may terminate the master servicer, and the trustee may do so without the consent of the certificateholders. Additionally, if the master servicer fails to provide certain information or perform certain duties related to the depositor's reporting obligations under the Securities Exchange Act of 1934, as amended (the "***Exchange Act***"), with respect to the issuing entity, the depositor, may, without the consent of any of the certificateholders terminate the master servicer.

**Certain Matters Regarding the Master Servicer, the Depositor and the Sellers**
The prospectus describes the indemnification to which the master servicer and the depositor (and

their respective directors, officers, employees and agents) are entitled and also describes the limitations on any liability of the master servicer and the depositor (and their respective directors, officers, employees and agents) to the issuing entity. See *"The Agreements — Certain Matters Regarding the Master Servicer and the Depositor"* in the prospectus. The pooling and servicing agreement provides that these same provisions regarding indemnification and exculpation apply to each seller.

### The Trustee

The Bank of New York will be the trustee under the pooling and servicing agreement. The Bank of New York has been, and currently is, serving as indenture trustee and trustee for numerous securitization transactions and programs involving pools of residential mortgages. The depositor, Countrywide Home Loans and any unaffiliated seller may maintain other banking relationships in the ordinary course of business with the trustee. The offered certificates may be surrendered at the corporate trust office of the trustee located at 101 Barclay Street, 8W, New York, New York 10286, Attention: Corporate Trust Administration or another address that the trustee may designate from time to time.

The trustee will be liable for its own negligent action, its own negligent failure to act or its own willful misconduct. However, the trustee will not be liable, individually or as trustee,

· for an error of judgment made in good faith by a responsible officer of the trustee, unless the trustee was negligent in ascertaining the pertinent facts,

· with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the holders of certificates evidencing not less than 25% of the Voting Rights of the certificates relating to the time, method and place of conducting any proceeding for any remedy available to the trustee, or exercising any trust or power conferred upon the trustee under the pooling and servicing agreement,

· for any action taken, suffered or omitted by it under the pooling and servicing agreement in good faith and in accordance with an opinion of counsel or believed by the trustee to be authorized or within the discretion or rights or powers that it has under the pooling and servicing agreement, or

· for any loss on any investment of funds pursuant to the pooling and servicing agreement (other than as issuer of the investment security).

The trustee is also entitled to rely without further investigation upon any resolution, officer's certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

The trustee and any successor trustee will, at all times, be a corporation or association organized and doing business under the laws of a state or the United States of America, authorized under the laws of the United States of America to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000, subject to supervision or examination by a federal or

state authority and with a credit rating that would not cause any of the rating agencies identified as rating the certificates in the prospectus supplement to reduce or withdraw their respective then-current ratings of any class of certificates (or having provided security from time to time as is sufficient to avoid the reduction). If the trustee no longer meets the foregoing requirements, the trustee has agreed to resign immediately.

The trustee may at any time resign by giving written notice of resignation to the depositor, the master servicer, each rating agency identified as rating the certificates in the prospectus supplement and the certificateholders, not less than 60 days before the specified resignation date. The resignation shall not be effective until a successor trustee has been appointed. If a successor trustee has not been appointed within 30 days after the trustee gives notice of resignation, the resigning trustee may petition any court of competent jurisdiction for the appointment of a successor trustee.

The depositor or the master servicer may remove the trustee and appoint a successor trustee if:

· the trustee ceases to meet the eligibility requirements described above and fails to resign after written request to do so is delivered to the trustee by the depositor,

· the trustee becomes incapable of acting, or is adjudged as bankrupt or insolvent, or a receiver of the trustee or of its property is appointed, or any public officer takes charge or control of the trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, or

· a tax is imposed with respect to the issuing entity by any state in which the trustee or the issuing entity is located and the imposition of the tax would be avoided by the appointment of a different trustee.

If the trustee fails to provide certain information or perform certain duties related to the depositor's reporting obligations under the Exchange Act with respect to the issuing entity, the depositor may terminate the trustee without the consent of any of the certificateholders. In addition, the holders of certificates evidencing at least 51% of the Voting Rights of the certificates may at any time remove the trustee and appoint a successor trustee. Notice of any removal of the trustee shall be given by the successor trustee to each rating agency identified as rating the certificates in the prospectus supplement.

Any resignation or removal of the trustee and appointment of a successor trustee pursuant to any of the provisions described above will become effective upon acceptance of appointment by the successor trustee.

A successor trustee will not be appointed unless the successor trustee meets the eligibility requirements described above and its appointment does not adversely affect the then-current ratings of the certificates.

## Optional Purchase of Defaulted Loans and Certain Delinquent Loans

The Master Servicer may, at its option but subject to the conditions set forth in the Pooling and

Servicing Agreement, purchase from the issuing entity any Mortgage Loan which is delinquent in payment by 151 days or more. The Master Servicer may enter into an agreement with a third party, which may be a certificateholder, granting the party the right to direct the Master Servicer to exercise its right to purchase those defaulted Mortgage Loans and requiring that party to purchase those Mortgage Loans from the Master Servicer. In addition, to the extent specified in the prospectus supplement relating to any series of certificates, if a Mortgage Loan becomes subject to a repurchase obligation of an unaffiliated seller to Countrywide Home Loans due to a delinquency on a scheduled payment due on or prior to the first scheduled payment owing to the issuing entity, the Master Servicer will have the option to purchase that Mortgage Loan until the 270th day following the date on which that Mortgage Loan becomes subject to that repurchase obligation.

Any purchase pursuant to the provisions described above shall be at a price equal to 100% of the Stated Principal Balance of the Mortgage Loan plus accrued interest on it at the applicable mortgage rate from the date through which interest was last paid by the related borrower or advanced (and not reimbursed) to the first day of the month in which the amount is to be distributed.

## Certain Modifications and Refinancings

Countrywide Home Loans, without approval from the Rating Agencies, will be permitted under the pooling and servicing agreement to solicit borrowers for reductions to the Mortgage Rates of their respective Mortgage Loans. If a borrower requests such a reduction, the master servicer will be permitted to agree to the rate reduction provided that Countrywide Home Loans purchases the Mortgage Loan from the issuing entity immediately following the modification. Any purchase of a mortgage loan subject to a modification will be for a price equal to 100% of the Stated Principal Balance of that mortgage loan, plus accrued and unpaid interest on the mortgage loan up to the next Due Date at the applicable net mortgage rate, net of any unreimbursed advances of principal and interest on the mortgage loan made by the master servicer. Countrywide Home Loans will remit the purchase price to the master servicer for deposit into the Certificate Account within one business day of the purchase of that mortgage loan. Purchases of mortgage loans may occur when prevailing interest rates are below the interest rates on the mortgage loans and borrowers request modifications as an alternative to refinancings. Countrywide Home Loans will indemnify the issuing entity against liability for any prohibited transactions taxes and related interest, additions or penalties incurred by any REMIC as a result of any modification or purchase.

*EXHIBIT*

*CASE 10-503*



## U.S. ECONOMITOR

# Countrywide Admits to Not Conveying Notes to Mortgage Securitization Trusts

Yves Smith | Nov 22, 2010 1:21PM

Testimony in a New Jersey bankruptcy court case provides proof of the scenario we've depicted on this blog since September, namely, that subprime originators, starting sometime in the 2004-2005 timeframe, if not earlier, stopped conveying note (the borrower IOU) to mortgage securitization trust as stipulated in the pooling and servicing agreement.

Professor Adam Levitin in his testimony before the House Financial Services Committee last week described what the implications would be:

> If mortgages were not properly transferred in the securitization process, then mortgage-backed securities would in fact not be backed by any mortgages whatsoever. The chain of title concerns stem from transactions that make assumptions about the resolution of unsettled law. If those legal issues are resolved differently, then there would be a failure of the transfer of mortgages into securitization trusts, which would cloud title to nearly every property in the United States and would create contract rescission/putback liabilities in the trillions of dollars, greatly exceeding the capital of the US's major financial institutions....

> Recently, arguments have been raised in foreclosure litigation about whether the notes and mortgages were in fact properly transferred to the securitization trusts. This is a critical issue because the trust has standing to foreclose if, and only if it is the mortgagee. If the notes and mortgages were not transferred to the trust, then the trust lacks standing to foreclose...

> If the notes and mortgages were not properly transferred to the trusts, then the mortgage-backed securities that the investors' purchased were in fact non-mortgage-backed securities. In such a case, investors would have a claim for the rescission of the MBS, meaning that the securitization would be unwound, with investors receiving back their original payments at par (possibly with interest at the judgment rate). Rescission would mean that the securitization sponsor would have the notes and mortgages on its books, meaning that the losses on the loans would be the securitization sponsor's, not the MBS investors, and that the securitization sponsor would have to have risk-weighted capital for the mortgages. If this problem exists on a wide-scale, there is not the capital in the financial system to pay for the rescission claims; the rescission claims would be in the trillions of dollars, making the major banking institutions in the United States would be insolvent.

As we indicated back in September, it appeared that Countrywide, and likely many other subprime orignators quit conveying the notes to the securitization trusts sometime in the 2004-2005 time frame. Yet bizarrely, they did not change the pooling and servicing agreements to reflect what appears to be a change in industry practice. Our evidence of this change was strictly anecdotal; this bankruptcy court filing, posted at StopForeclosureFraud provides the first bit of concrete proof. The key section:

*As to the location of the note, Ms. DeMartini testified that to her knowledge, the original note never left the possession of Countrywide, and that the original note appears to have been transferred to Countrywide's foreclosure unit, as evidenced by internal FedEx tracking numbers. She also confirmed that the new allonge had not been attached or otherwise affixed to the note. She testified further that it was customary for Countrywide to maintain possession of the original note and related loan documents.*

This is significant for two reasons: first, it points to pattern and practice, and not a mere isolated lapse. Second, Countrywide, the largest subprime originator, reported in SEC filings that it securitized 96% of the loans it originated. So this activity cannot be defended by arguing that Countrywide retained notes because it was not on-selling them; the overwhelming majority of its mortgage notes clearly were intended to go to RMBS trusts, but it appears industry participants came to see it as too much bother to adhere to the commitments in their contracts.

As one hedge fund investor noted, "Whenever we've gotten into situations on the short side, no matter how bad we think it is, it always proven to be worse." The mortgage securitization mess looks to be adhering to this script.

Originally published at naked capitalism and reproduced here with the author's permission.

All rights reserved. *Opinions and comments on RGE EconoMonitors do not necessarily reflect the views of Roubini Global Economics, LLC, which encourages a free-ranging debate among its own analysts and our EconoMonitor community. RGE takes no responsibility for verifying the accuracy of any opinions expressed by outside contributors. We encourage cross-linking but must insist that no forwarding, reprinting, republication or any other redistribution of RGE content is permissible without expressed consent of RGE.*

**Comments for this blog can only be created or viewed by registered members of RGE's EconoMonitor community and RGE clients.**

**To create a free account, please visit our Registration Page.**

**If you are an RGE Client, please log in to your account.**

*EXHIBIT 6*

*CASE # 10-503*

**Sharon Sparlin**

| | |
|---|---|
| **Subject:** | OSR69_Bank of American Phone Conversations |
| **Status:** | Not Started |
| **Percent Complete:** | 0% |
| **Total Work:** | 0 hours |
| **Actual Work:** | 0 hours |
| **Owner:** | Sharon Sparlin |

*PROPERTY
491 S. Douglas WASH
PROPERTY "C"*

**2/14/10 2:00p OSR69**
Received a call from a Karen Menhte in India.   Not sure which
property she was calling on because she said I had to give her
some personal information but I told her before I would do that
I wanted to know what property she was calling about.  She
refused to tell me so I told her I wouldn't give her my personal
information.  She then asked me to call the 800 back and talk
to someone.  I again asked her about which property and
she refused to tell me.

**2/5/10 9:00a OSR69**
Tamara transferred to Benjamin in NE Tennessee, emp #5787
I asked him when notification was sent to either myself or to the
real estate agent asking for a response.  He said nothing was sent.
I asked how could I respond to something I didn't get.  He had no
explanation and said he would reopen the short sale but I told him
to document I would be filing a lawsuit against them.  The prospective
buyers pulled their offer because of BAC.

**2/5/10 845a OSR69**
Called 866-880-1232 and spoke with Tamara in the Midwest Center in Oklahoma City.
Said a short sale offer was sent to the real estate agent to accept or reject and they
did not respond so short sale declined.  I asked what was the short sale offer that
was given to the real estate agent and who was the assigned negotiator.
She said my account has been 'referred out' which means it has moved from
a person handling the account to a computer.  They called it "EQUATOR" and said
it would have to be done online at www.bankofamerica.com\shortsale for me
or www.bankofamerica.com\equator for the real estate agent.  Tamara said there
was nothing more that short sale support could do.  Everything now had to be
done through the computer.  I asked her when my file was sent over to the
computer for handling and she said on 1/22/10.  I asked why neither I nor the
agent was notified that they had done that and how would we know to respond?
She simply apologized and said there was nothing she could do I had to go to
the website.

**1/20/10 8:05a OSR69**
Called and spoke with Alfredo Silva in Home Retention.  He wouldn't tell me what city
He lived in just that he was in TX.  He did give me his employee ID #0120.  He said that
A negotiator had NOT BEEN assigned yet and that it was sent to Fannie Mae on 1/11/2010
for another appraisal.   I was totally livid with him and told him that it better not go to
foreclosure because of their total dragging of their feet.  He said it was set for foreclosure

1

on 4/20/2010 and there was nothing he could do.  I told him if it was foreclosed on I would
file a lawsuit against them.

1/16/2010  2:20pm  **OSR69**
Received letter from ReconTrust advising they were beginning foreclosure process.
Called 866-880-1232 – closed
Called 1-888-200-5872 (listed on the letter from ReconTrust referred to reference letter ID **73266**.
Answered the phone BAC Home Loans Servicing.  Transferred to Home Retention Divison – closed

12/21/09  11:15am  **OSR69**
Called 866-880-1232 and spoke with Maria Pena in San Antonio. Selma sent in today at 925am
and ordered a BPO. Takes 7-10 business days.  Then negotiator will review the BPO and decide
if goes to Phase 2.   Phase 2 could take 30-45 calendar days and could be assigned another negotiator.
Should have BPO by 1/7/09 so call back then.  I asked her if the BPO required me to notify tenants that
someone may want to inspect the home.  She said no a BPO was like a "drive by" or "market evaluation"
not a true appraisal. I told her I was very upset about this whole thing that I had been told 2 times that
the BPO had already been ordered and someone was lying.  She assured me that the negotiator Selma
ordered it today at 925am.  I told her I would call back on 1/7/09 but wasn't really very hopeful that
anything would be any different.

12/21/09  **OSR69**
Received an email
Good Morning,

I do apologize but do to confidentiality and security reasons we can't provided status updates via email you will need to
call 866-880-1232 and talk to one of our short sale support agents. Thank you for your time and have a great day.

Jaime Badger
Short Sale Support Team Lead
Customer Service and Relationship Deepening
1-800-399-1762 ext 8253


12/21/09 **OSR69**
email to Greg with cc to Selma and Monica

12/15/09 **OSR69**
email sent to Greg with cc to Selma

12/11/09 **OSR69**
email sent to Selma for fup info

12/7/09 **OSR69**
sent fup email to Selma Bosankic asking for timeframe to review file

12/4/09  **OSR69**
sent fup email to Selma Bosankic

11/30/09 11:30am **OSR69**
recd email from Greg Sporn – negotiator assigned is Selma Bosankic and copied
in Monica.   Sent her an email asking next step.  Selma.Bosankic@bankofamerica.com

11/30/09  10:00am  **OSR69**

email sent to Greg Sporn for update

**11/23/2009  8:05am  OSR69**
recd email saying no negotiator because no appraisal.  Said to get back on 30th
I emailed him back asking for recourse if no negotiator is assigned by the 30th.

**11/23/2009  7:30am  OSR69**
email sent to Greg Sporn for update

**11/17/2009  8:40am  OSR69**
email sent to Greg with cc to Brian, Monica and Title Security asking for status update

**11/9/09  9:20am OSR69**
HUD1 statement received.  Emailed form to Greg.Sporn@bankofamerica.com
copied Monica from Tierra Antigua Realty and also Stephanie from Title Security.
Also copied Brian Best at BofA.
Sent fax to 888-491-4947 and also 805-520-5019.

**11/2/09  2:15am  OSR69**
email to Monica asking for update on when HUD1 will be sent

**11/1/09  9:05am  OSR69**
emailed Monica and also LMTCB to ask her to send me a copy of the HUD1 settlement

**11/1/09  8:10am  OSR69**
Called Loan Servicing Dept at 866-880-1232 and spoke with Nicole in Spokane, WA.
Nicole told me that on the 28th it went into SPO Value Review which is another holding Q.
The bpo is the appraisal review and that has been requested.  She said to wait another
10 business days and call back.  I told her that was not acceptable and asked for a supervisor.
She transferred me to Greg Sporn in Spokane, WA.  Greg confirmed the following with me
  1. Opened as DIL on 9/1/09 and closed on 9/3/09
  2. Opened as DIL on 9/8/09 and assigned processor but closed on 9/18/09 due to offer received.
  3. Received docs on 10/7/09 for short sale and was opened as short sale on 10/8/09
  4. On 10/28/09 the bpo was ordered.  Currently awaiting HUD1 before negotiator can be assigned
HUD1 upload has a 3 day turn around.  Asked that the HUD1 statement only be faxed to the following
with account number written on each page.
805-520-5019    (expedite fax with a 3 day turn around)  (NOT MORE THAN 10 PAGES AT A TIME)
888-491-4947    (normal fax)
Also asked to email him the form in pdf format – (not more than 5MB)
email to Greg.Sporn@bankofamerica.com
He will forward to Brian and ask him to upload ASAP
Greg was extremely knowledgeable of the 'process' and advised me of the following:
Short sales normally take about 90 days
BAC staff definitely have a learning curve because of quick hires due to volumne so sometimes
miscommunicate
Once a SS is opened a review team has 10 business days to review and assign a negotiator (if all docs are
there)
After negotiator is assigned they have 30 business days – If no action within 20 days I can call and request
escalation
Can call and request:
  1. Closing date extensions
  2. Escalation of appraisal
  3. **Postponement of foreclosure sale  (Call 5 days BEFORE foreclosure sale date)**

10/26/2009  8:20am  **OSR69**
Called Loan Servicing Dept at 866-880-1232 and spoke with Cindy at Glendale, CA.
Still pending assignment for negotiator.  Said would take 10-15 BUSINESS days.
Will call back next Monday.  Sent email to Monica to advise.

10/19/2009  5:15p  **OSR69**
Called Loan Servicing Dept at 866-880-1232 and spoke with Scott in Glendale, CA.
Asked if negotiator had been assigned yet.  Scott advd negotiator has been reopened
on 10/8/09 and not assigned yet.  Should be assigned by next Monday 10/26.  Call
back then.

10/13/2009  9:00am  **OSR69**
Called Loan Servicing Dept at 866-880-1232 and spoke with Elliott in Lancaster, CA.
They have required documents and will be assigning a negotiator shortly.  He advd
me to call back weekly for updates.  Once assigned they will request an appraisal.

10/7/09  9:35a  **OSR69**
Called the Loan Servicing Dept at 866-880-1232 and spoke with Brian in Glendale, CA.
Advd him I faxed over info and he said it would take 10 days to load up in their system.
In the interim, I could email him, attaching a separate pdf file for each attachment.
He could then get it uploaded within 24hrs and get it set up in Phase I and assign a
case worker.  It would take about 10 days to get the case worker assigned.
Send to Brian at brian.best@bankofamerica.com
Also emailed to Brian Best at BAC copies of all documents along with real estate
agent information and advised Brian that the HUD1 will come from real estate agent.
brian.best@bankofamerica.com

10/6/09  9:50am  **ORS69**
Faxed over requested info to 888-491-4947.

10/5/09  9:00am  **OSR69**
Faxed short sale authorization info to 800-658-0395

10/1/09  12:45p  **OSR69**
I called the 866-880-1232 and spoke with Keisha in Texas.  She said I would
first have to submit required documentation to 888-491-4947.  Along with all
required docs:
2 years tax returns
2 mo bank statements and pay stubs
hardship letter
copy of purchase agreement
copy of MLS listing
settlement statement

I would also need to fax authorization letter for agent to talk with them directly.
to 800-658-0395.   I sent an email off to Maria at the real estate agency to obtain
this information. BofA said to call every week for updates.

10/1/09  12:45p  **OSR69**
Recd a call from Delores Bachmura.  She is noting in the file that I have
an offer and referred me to 866-880-1232 x 5815.

10/1/09  9:10am  **OSR69**
Called Delores Bachmura at 805-520-5100 x 5823 to advise had a short
sale offer on the home and needed to know what to do now.  LMTCB

10/1/09  9:00am  **OSR69**
Called Monica Yrigoyen – real estate agent who submitted short sale offer.
Folks are still interested in processing.  Advised her I would call my case
worker and let her know what they now need.  Her phone is 471-4711 and
her email is myrigoyen65@yahoo.com

9/16/09  8:50am  **OSR69**
email to Stacie Whitfield with a copy to Delores Bachmura to send
fair market value to her today.

9/16/09  8:30am  **OSR69**
Recd a call from Delores Bachmura.  Can't start DIL until account is 60 days
delinquent and right now it's only due for 8/1/09 so she can start the process
on 10/1/09.  She asked that flatlist send her the fair market value to
delores.bachmura@bankofamerica.com today and that I give her a call
back on 10/1/09 at 805-520-5100 x 5823.  She works 7a-4p daily.  If
DIL goes thru they send a 1099 for the difference between the unpaid
principal balance and the new appraised value.  Also, says to keep HOA
dues current because they won't process with dues delinquent.

9/16/09  6:40am  **OSR69**
Called 805-520-5100 x 5823 and LMTCB with Delores Bachmura about
deed-in-lieu.

9/15/09  7:45am  **OSR69**
Called 800-669-0102 and spoke with Jessica in Lancaster, CA. Hadvd her
to document no contact from 9/17-9/30.

9/12/09  8:14am  **OSR69**
Called 800-669-0102 and spoke with Kim in TX. Assigned to **deed-in-lieu**
person on 9/8/09.  Her name is ***Delores Bachmura*** at 805-520-5100 x 5823
and she will be in contact with me.

9/8/09  12:35p **OSR69**
Called Home Loans Customer Service at 800-669-6607 and spoke with
Jessica. Payoff **as of 9/8/09** is **$180,746.99** plus per diem of $36.06 per day.
Breakdown:
Principal $175,500
Interest  $2,446.19 (7/1/09-9/8/09)
Recording Fee   $10.00
Late Charges  $109.68
Negative Escrow  $2,374.00
Mortgage Insurance $307.12

9/8/09  11:30am  **OSR69**
Called payoff dept **800-669-6607** to get a payoff figure as of today
along with a per diem figure.  Spoke with Tamara who transferred me to
another dept.  Waited almost 30 min and was disconnected.

9/8/09  11:30am
Recd phone message from Rebecca (?) with Home Loan Counseling Dept
to call 1-800-405-0078 x 6334.  It was very difficult to hear the message
but when I called the number and dialed the ext I had to leave a message
for a call back.  I couldn't leave which loan number because the message
on the answering machine didn't say which loan it was in reference to.

9/8/09  7:20am  **OSR69**
Called 800-669-0102 and spoke with Crincetta in Ft Worth, TX.  Advised
I had a potential buyer for the property.  She transferred me to the Short
Sell department who will walk me through  the process.  Spoke with Linda
in Simi Valley, CA.  Gave me items needed  to proceed with short sale.
   1.  copy of the offer
   2.  HUD 1 statement thru escrow company
   3.  Last 2 mo of bank statements
   4.  Most recent 2 pay stubs
   5.  Hardship letter – reason for delinquency
   6.  2 years of tax returns 2008 & 2007
   7.  Income analysis (debt vs salary)
Once tagged for short sale it's a 3 step process (usually takes 3 months):
   1.  Negotiation Stage
   2.  Completion Stage
   3.  Closing Stage and approval letter
*Short sale information* should be faxed to **888-491-4947** and should fax
10-15 pages at a time and put the loan number of each page.
If I want anyone else to be authorize to speak to them I would need
to fax an *authorization letter* to Customer Service fax **805-520-5019** first.
Linda said to contact Home Retention for payoff if I want to counteroffer
them.  Their number is 1-800-669-6650.  Called and spoke with Sharon in
Ft Worth, TX.  She noted account is being worked on but couldn't get the
payoff.  She is transferring me to payoff dept at **800-669-6607** to get that figure.
Transferred to Payoff Dept and spoke with Josh in PHX.  Payoff is $175,500 principal,
$3,543.07 Interest, $30 expedite service fee, Late Charges $109.68, Mortgage premiums
$460.68, total due **$182,027.43 good to 10/8/09.**

9/4/09  7:20am  **OSR69**
Called 800-669-0102 and spoke with Kim in India.  At first she said she couldn't give
me any info but would have to transfer to Foreclosure Dept at 800-669-6650.  Asked her
to just check and make sure it was being worked on for 'deed-in-lieu'.
She said someone called me on 9/3 and LMTCB.  I told her I was here all day and did not
receive a phone message.  She took all the information needed and said
she would document the record.  She said total due was $3,398.18 for Aug & Sept.
Told her I couldn't pay that and she documented the record that affect.  She also
asked for a contact phone for appraisal of the property.  Gave her my name and home
phone.  She said that's all I needed to do at this point.  She said to call back periodically.

9/1/09  10:55am  **OSR69**
Recd call from Amanda Hubbard.  Nothing she can do.

9/1/09  9:00am  **OSR69**
Called 800-669-0102 to verify status on all accounts. Spoke with Eric in Costa Rica.
On **OSR69** owe for Aug and Sept $3,398.80.  Told him I wanted to start deed-in-lieu

process. He took all info and sent it off. Can wait for them to contact me or fax hardship letter to 800-658-0395. Also said that **VMT131** in foreclosure with sale date of 10/26/09.   Deed in lieu process reopened on 8/31/09. Eric suggested I call back every week to followup on this. Gave me ctc info for Jan Lauerman, Short Sale Dept at 866-880-1232.


**8/27/09 9:30am  OSR69**
recd a call asking for Mike. Told her he wasn't available and my name was on the accounts and she could speak with me. I asked her what property address or account number was she calling on and she said she couldn't find where I was authorized and due to privacy laws was unable to talk with me. She said to just have Mike call back. When I asked her again in reference to which house she refused to give it to me. Told her Mike had a stroke and I had submitted paperwork to handle all affairs and they should have it on file. She said she couldn't find it and I would have to fax it again.

**8/12/09  8:41a  OSR69**
recd msg on ans machine to call Daniel at 800-405-0078. No other info given. No account number or property address. Called the number back but they couldn't determine which property or account I was referring to.

**6/29/09  7:15am  OSR69**
Faxed to 800-658-0395 Request for Copy of Promissory Note letter. Require response within 10 days to be mailed to home address.

**6/18/09  8:45am  OSR69**
Called 800-669-0102 and spoke with
Rachel in India. She said could do a voluntary repossession by doing a 'deed in lieu'. I asked if we could modify to $1100 p/mo until the house sells. She checked with her supervisor who said 'deed in lieu' would be their ownly option. I asked about how that was handled. She as documenting that income/expenses for the 2 houses under PRACTICE GREEN LLC which is  $2275/mo in and $2275/mo out. No other income/expenses.
She took information and submitted for 'deed in lieu'. I am to fax info to 800-658-0395 within 48 hrs. Need property
docs and listing info. Also letter stating no tax returns filed and why and that rents are not enough to cover payments.
Also gave me short sale 888-491-4947 if I need it and Customer Service 800-669-6607 if I want a copy of the signed note.

**6/10/09 8:50am  OSR69**
Called 800-669-0102 and spoke with Kim.  She was unable to get thru to Carlos and said she doesn't know how to direct dial him or how to get to that ext thru the 800 number.
She tried his ext again but unable to get thru.  She wants to help but I told her that I didn't want to spend yet another hour explaining this whole situation with the LLC ownership issue.
She put me on hold and said to wait while she transferred.  Then spoke with Michael Lorenzo Pernia in Lancaster,
CA. He advised that 'deed in lieu' is not an option.  He was very indignent and cocky with me.
I told him others had said I could do it but he said no.  There is nothing they can do at this point.
They will continue with collection efforts.  I asked for them to modify the loan to amt of the rents and he said no.  I told him that I wanted them to take the properties back and again he said no.
I then asked for a copy of my installment note – he referred me to  www.customers.countrywide.com
Went to this location but was unable to find or obtain a copy of my signed mortgage.

**6/6/09  11am  OSR69**

Rec'd a call from Carlos Fernandez at 800-669-0102 x 4355.  Gave him detailed info on
the LLC structure and told him I wanted to modify all 5 loans until the houses sold.
Told him I couldn't pay personally due to the fact they were owned/controlled by
the LLCs.  He documented the records with our conversation and said to call him back
between 9am-5pm PST on Monday, June 8th and he will conference call to try to get something done.

5/7/09  9:50am  **OSR69**
I called the 800-308-2227 number.  They answered as Money Management International.
www.moneymanagement.org
I spoke with a gal who said they basically obtain credit info and supply that to the lender
and try to work with them to do a loan modification.  I advd that BofA said they wouldn't
modify the loan due to the fact that the house was for sale and listed on the MLS.

5/7/09  9:50am  **OSR69**
Called the Hud 800-569-4287.  It was a recorded message.  I entered my zip code
and it gave me a phone referral of 800-308-2227

6/19/08  9:50am  **OSR69**
Called retention dept 1-800-669-0102 and spoke with Christine in CA X 9075.
Told her I was current but wanted to work out a modification.  She said there was
NOTHING they would do until the loan becomes delinquent.  I asked who owned
my note and was told "It's a secret".  I then asked Christine to document
the loan that I called and was trying to get something resolved but was unsuccessful.

*Exhibit J*
*CASE #10-503*

**Sharon Sparlin**

**Subject:**              VMT133_BAC/BOA Phone Log

**Status:**              Not Started
**Percent Complete:**    0%

**Total Work:**          0 hours
**Actual Work:**         0 hours

**Owner:**               Sharon Sparlin

**Categories:**          Red Category

*PROPERTY*
*7922 S. Clarkson*
*PROPERTY "A"*

**2/14/10  2:00p  VMT133**
Received a call from a Karen Menhte in India.
Not sure which property she was calling on because she said I had to give her
some personal information but I told her before I would not do that again because
an authorization letter from Michael was faxed on 3 separate occasions.
I wanted to know what property she was calling about.  She
refused to tell me so I told her I wouldn't give her my personal
information.  She then asked me to call the 800 back and talk
to someone.  I again asked her about which property and
she refused to tell me.

**1/26/10  11:15am  VMT133**
Received a call from Blaine in India.  When I asked for his employee or operator number
he refused to give it to me.  I told him I had a QWR on this property and he was in violation
of RESPA law and subject to penalties under the law.  I asked to speak with a supervisor.
He transferred me to Adam Khan who is in Bombay.  He said he was with Home Retention
Dept.  I told him the same thing about RESPA violations and he said he had nothing to
indicate that in his file and wanted to know when we would send the January payment.
I told him I wasn't going to speak with him about the matter and to document the loan
with our phone conversation about RESPA violations.

**12/23/09  9:15am  VMT133**
recd a call from Ryan.  Said he was calling about the payment for the house on
Clarkson Court. When I asked him which house number he refused to tell me and
asked me to provide him with the 2 different account numbers.  I told him that he
called me and if he wanted me to talk with him about it I needed him to tell me
which property he was calling on.  He refused.  I told him I wouldn't speak with
him unless he could tell me which house he was calling about.

**12/8/2009  11:20a  VMT133**
Called 800-669-0102 and spoke with Mandy in TX.  Asked her for the name of the investment
company that owned the promissory note.  She said I couldn't have that information and that
she didn't have access to it.  Asked to speak with her Supervisor.  Spoke with Jennifer Hamon,
a Supervisor in Home Retention Dept Bakersfield, CA, Employee #9437.  She refused to give
me investors name.  Asked for her Supervisor, who is Ginger Rossie in Bakersfield, CA.
Jennifer said Ginger wasn't in the office and she would transfer me to another Supervisor.
Jennifer said she wasn't able to find a Supervisor to talk with me.  I asked her for the name of

1

Ginger Rossie's Supervisor. She said it was Ginny Umana in Lancaster, CA. I asked to be transferred to her. She said she had tried her and she wasn't available either. I told her that they transfer me all over the country all the time and I wanted a Supervisor somewhere. I was finally transferred to Ginnie Umana in Lancaster, CA. She wouldn't give me her employee number just said she was the Unit Manager and her direct phone was 1-800-601-2522 x 5867. She said she would get an answer for me today. Her supervisor is Elizabeth Vaughan in Lancaster, CA

12/2/09  1:10pm  **VMT133**
recd a call from John. Said he was calling about the payment for the house on Clarkson Court. When I asked him which house number he refused to tell me and asked me to provide him with the 2 different account numbers. I told him that he called me and if he wanted me to talk with him about it I needed him to tell me which property he was calling on. He refused. I told him I wouldn't speak with him unless he could tell me which house he was calling about.

11/16/2009 11:45am  **VMT133**
Got a call again from Melvin in Inda. Calling about shortage on Nov 1 payment. Told him to document the record that was all I was sending each month.

11/12/2009  8:25am  **VMT133**
Got a call from Simron in India. Says short for Nov – told her I would only send $1150 per month and for her just to document the record.

11/6/09  8:45am  **VMT133**
received a call from Shilpa in India from BAC – calling to ask when the payment would be sent. Says it's due for 11/1/09 and I told her I didn't appreciate the call and that it was only 5 days late. Told her I would send as soon as the tenants sent me the rent.

10/12/09  8:10am  **VMT133**
Payment posted $1150 on 10/8/09, Next due 11/1/09

9/15/09  7:40am  **VMT133**
Called 800-669-0102 and spoke with Jessica in Lancaster, CA.
Hadvd her to document record no contact from 9/17-9/30 due to being away.

9/12/09  8:30am  **VMT133**
Online recording:  Loan Balance $177,700
Escrow -$1,566.41
Mortagage rate 7.5%
Pmt of $1,150 recd 8/21/09
Next due 9/1/09

9/8/09  11:30am  **VMT133**
Recd phone message from Rebecca (?) with Home Loan Counseling Dept to call 1-800-405-0078 x 6334. It was very difficult to hear the message but when I called the number and dialed the ext I had to leave a message for a call back. I couldn't leave a message about which loan number because the message on the answering machine didn't say which loan it was in reference to.

9/2/09  11:14am  **VMT133**
recd phone message to call Jan at BofA 800-405-0078

**8/27/09  9:30am VMT133**
recd call asking for Mike.  Told her he wasn't available and my name was on the accounts
and she could speak with me.  I asked her what property address or account number was
she calling on and she said she couldn't find where I was authorized and due to privacy laws
was unable to talk with me.  She said to just have Mike call back.  When I asked her again
in reference to which house she refused to give it to me.

**8/21/09  7:20am  VMT133**
Called and spoke with Peter in Tempe.  Advd 8/7 $1150 was returned 8/17 and the
payment I made 8/12 for $1150 was returned on 8/19.  I requested another $1150
be paid on 8/19 and he says he shows that credited to the account.  Also advd another
$1150 should post tonight per online account info and another $1150 will be sent 9/2
to bring current.

**8/20/09  6:55p  VMT133**
Called 1-800-669-6607 on VMT133.  Closed – only open until 9pm EST.


**8/20/09  3:30p VMT133**
recd call from Matthew Boston from Loan Modification dept.  He said he was calling about 9151 E Showcase
Lane
and I told him that was my personal residence and I needed to know which property he was calling about he
just kept saying 9151 E Showcase Lane.  I told him that this property isn't with BofA that I had sent in the
"deed in lieu" on VMT133 and that I submitted verification of 2 payments @ $1150 on VMT133.
He said he didn't know what I was talking about so I told him I wouldn't discuss my personal residence with
him
and hung up.

**8/17/09   4:20p  VMT133**
Faxed over copy of statement (.docx file) as requested to show proof of 2 pmts @ $1150 on VMT133.

**8/17/09  3:40pm VMT133**
Called 800-669-0102 and spoke with Kathy in India about VMT133.  They do not show any payments since
July.
I advd her that $1150 was taken from the checking account on 8/7 and again on 8/12 but she doesn't show
any credit.
Advd me to fax over the copy of the statement showing the deduction and send it to 805-520-5019.  Told
her I would do that today.


**8/12/09  8:41a  VMT133**
recd msg on ans machine to call Daniel at 800-405-0078.


**8/4/09  1pm  VMT133**
recd call from BofA – spoke with Tracy.  She was calling about VMT133 and wanted shortage for July payment
and Aug payment.
Advd I had been working to get a modification to the loan.  She made note that payment will be sent today or
tomorrow
for July at $1150 and will continue to pay $1150 per month.

**6/29/09  7:15am  VMT133**
Faxed to 800-658-0395 Request for Copy of Promissory Note letter.  Require response within 10 days to be

mailed to home address.

6/18/09  8:45am  **VMT133**
Called 800-669-0102 and spoke with
Rachel in India. She said could do a voluntary repossession by doing a 'deed in lieu'. I asked if we could
modify to $1100 p/mo until the house sells. She checked with her supervisor who said 'deed in lieu' would be
their ownly option. I asked about how that was handled. She took information and submitted for 'deed in
lieu'. I am to fax info to 800-658-0395 within 48 hrs. Need property docs and listing info. Also letter stating no
tax returns and why and that rents not enough to cover payments.   Also gave me short sale 888-491-4947 if I
need it and Customer Service 800-669-6607 if I want a copy of the signed note.

6/10/09  8:50am  **VMT133**
Called 800-669-0102 and spoke with Kim.  She was unable to get thru to Carlos and said
she doesn't know how to direct dial him or how to get to that ext thru the 800 number.
She tried him ext again but unable to get thru. She wants to help but I told her that I didn't
want to spend yet another hour explaining this whole situation.
She put me on hold and said to wait while she reads the record.  Then spoke with Michael Lorenzo
Pernia in Lancaster, CA.  He was very nasty and he advised that 'deed in lieu' is not an option.
I told him others had said I could do it but he said no. There is nothing they can do at this point.
They will continue with collection efforts.  I asked for them to modify the loan to amt of the rents
and he said no.  I told him that I wanted them to take the properties back and again he said no.
I then asked for a copy of my installment note – he referred me to  www.customers.countrywide.com
Went to this location but was unable to find or obtain a copy of my signed mortgage.

6/6/09  11am  **VMT133**
Rec'd a call from Carlos Fernandez at 800-669-0102 x 4355.  Gave him detailed info on
and told him I wanted to modify the loan until the houses sold.
He documented the records with our conversation and said to call him back
between 9am-5pm PST on Monday, June 8th and he will conference call to try to get something done.

5/28/09  2:40P  **VMT133**
Called Countrywide   1-800-556-9568
Spoke with Patrese Roberts in Plano, TX
Unable to refinance or lower rate – would be based on personal income
Best rate is what we have. Can fax letter with my name To Whom It May Concern to allow me to discuss
matters
Customer Service at 800-669-6607.
She said if unable to make payments contact workout Dept at 800-669-6650

5/7/09  9:50am **VMT133**
I called the 800-308-2227 number.  They answered as Money Management International.
www.moneymanagement.org
I spoke with a gal who said they basically obtain credit info and supply that to the lender
and try to work with them to do a loan modification.  I advd that BofA said they wouldn't
modify the loan due to the fact that the house was for sale and listed on the MLS.

5/7/09  9:50am  **VMT133**
Called the HUD 800-569-4287.  It was a recorded message.  I entered my zip code
and it gave me a phone referral of 800-308-2227

4/6/09  8:25AM  **VMT131**
spoke with Haretta in DFW today about VMT131.  She is in Loan Modifications and
advised that we could opt for "deed in lieu" or short sell.  If we truly were trying to sell

she wouldn't do a modification because if they started to do that and then had an offer that wouldn't work.  Advd her that I would continue to send the monthly rents as they came in.

3/4/09  9:30am  **VMT131**
Spoke with Sam Chatlar in India, agent #4112.  Told him the home was for sale
Told him I could only send $1150/mo.   He said he would document the record and advised
I could request a 'deed-in-lieu' once home had been 90 days on the market.

10/30/08  **VMT133**
Recd letter from Countrywide – will not remove PMI

October, 2008  **VMT133**
Called BAC and requested Mortgage Insurance be removed

6/19/08  9:50am  **VMT133**
Called retention dept 1-800-669-0102 and spoke with Christine in CA X 9075.
Told her I was current but wanted to work out a modification.  She said there was
NOTHING they would do until the loan becomes delinquent.  I asked who owned
my note and was told "It's a secret".  I then asked Christine to document
the loan that I called and was trying to get something resolved but was unsuccessful.

2/22/08 **VMT131**
Recd letter of denial from BofA

02/2008 **VMT131**
Requested removal of Mortgage Insurance

*EXHIBIT 8*

*CASE #10-503*

PAGE 1




## RESIDENTIAL RESALE REAL ESTATE
# PURCHASE CONTRACT

The printed portion of this contract has been approved by the Arizona Association of REALTORS® ("AAR"). This is intended to be a binding contract. No representation is made as to the legal validity or adequacy of any provision or the tax consequences thereof. If you desire legal, tax or other professional advice, consult your attorney, tax advisor, insurance agent or professional consultant.

### 1. PROPERTY    *PROPERTY "C"*

**1a.** 1. BUYER: **MARK LACY**
                                          BUYER'S NAME(S)

2. SELLER: _____ or ☑ as identified in section 9c.
                                  SELLER'S NAME(S)

3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

**1b.** 5. Premises Address: **491 S. Douglas Wash Rd.** Assessor's #: **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**
6. City: **Vail**        County: **Pima**        AZ, Zip Code: **85641**
7. Legal Description: **Oasis Santa Rita lot 69**

**1c.** 8. $ **175,000** Full Purchase Price, paid as outlined below
9. $ **1,000** Earnest money **to be applied toward purchase price**
10. $ **174,000** **Financed with new VA loan at COE.**
11. $ _____
12. _____

**1d.** 13. Close of Escrow: Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
14. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all
15. closing documents, and perform all other acts necessary in sufficient time to allow COE to occur on
16. **October 30th 2009** ("COE Date"). If Escrow Company or recorder's office is closed on
      MONTH         DAY         YEAR
17. COE Date, COE shall occur on the next day that both are open for business.

18. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
19. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds
20. to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

**1e.** 21. Possession: Seller shall deliver possession, occupancy, access to keys and/or means to operate all locks, mailbox,
22. security system/alarms, and all common area facilities to Buyer at COE or ☐ _____
23. Broker(s) recommend that the parties seek appropriate counsel from insurance, legal, tax, and accounting professionals
24. regarding the risks of pre-possession or post-possession of the Premises.

**1f.** 25. Addenda Incorporated: ☐ Assumption and Carryback   ☐ Buyer Contingency   ☐ Domestic Water Well   ☐ HUD forms
26. ☑ H.O.A. ☐ Lead-Based Paint Disclosure   ☐ Additional Clause   ☐ On-site Wastewater Treatment Facility
27. ☑ Other: **Shortsale Addendum**

**1g.** 28. Fixtures and Personal Property: Seller agrees that all existing fixtures on the Premises, and any existing personal
29. property specified herein, shall be included in this sale, including the following:

30. • free-standing range/oven      • flush-mounted speakers      • outdoor landscaping, fountains, and lighting
31. • built-in appliances      • attached fireplace equipment      • water-misting systems
32. • light fixtures      • window and door screens, sun screens      • solar systems
33. • ceiling fans      • storm windows and doors      • pellet, wood-burning or gas-log stoves
34. • towel, curtain and drapery rods      • shutters and awnings      • timers
35. • draperies and other window coverings      • garage door openers and controls      • mailbox
36. • attached floor coverings      • attached TV/media antennas/satellite dishes      • storage sheds

Initials: _____ / _____          **©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05**          Initials: _____ / _____
SELLER   SELLER                                                                        BUYER   BUYER

37. If owned by the Seller, the following items also are included in this sale
38.  • pool and spa equipment (including any          • security and/or fire systems          • water softeners
39.    mechanical or other cleaning systems)            and/or alarms                          • water purification systems
40. Additional existing personal property included in this sale (if checked): ☐ refrigerator ☐ washer ☐ dryer
41. As described: dishwasher, oven|stove, garage, microwave,
42. satellite dish, satellite controls
43. ☐ Other: _____
44. _____
45. _____
46. Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no
47. monetary value, and free and clear of all liens or encumbrances.
48. Fixtures and leased items NOT included: _____
49. IF THIS IS AN ALL CASH SALE, GO TO SECTION 3.

# 2. FINANCING

2a. 50. Loan Contingency: Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval for the loan described
51. in the AAR Loan Status Report without conditions no later than COE Date. If Buyer is unable to obtain loan approval without
52. conditions by COE Date, Buyer shall deliver a notice of the inability to obtain loan approval without conditions to Seller or Escrow
53. Company no later than COE Date.

2b. 54. Unfulfilled Loan Contingency: This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
55. after diligent and good faith effort, Buyer is unable to obtain loan approval without conditions by COE Date. Buyer is aware that
56. failure to have the down payment or other funds due from Buyer necessary to obtain the loan approval without conditions and
57. close this transaction is not an unfulfilled loan contingency. Buyer acknowledges that prepaid items paid separately from earnest
58. money are not refundable.

2c. 59. Appraisal Contingency: Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises by an appraiser
60. acceptable to lender for at least the sales price. If the Premises fails to appraise for the sales price, Buyer has five (5) days after notice
61. of the appraised value to cancel this Contract and receive a refund of the Earnest Money or the appraisal contingency shall be waived.

2d. 62. Loan Status Report: The AAR Loan Status Report ("LSR") with, at a minimum, the Buyer's Loan Information section
63. completed, describing the current status of the Buyer's proposed loan, is attached hereto and incorporated herein by reference.

2e. 64. Loan Application: Unless previously completed, within five (5) days after Contract acceptance, Buyer shall (i) complete, sign
65. and deliver to the lender a loan application with requested disclosures and documentation; (ii) grant lender
66. permission to access Buyer's Trimerged Residential Credit Report; and (iii) pay all required loan application fees.

2f. 67. Loan Processing During Escrow: Buyer agrees to diligently work to obtain the loan and will promptly provide the lender with
68. all additional documentation required. Buyer instructs the lender to provide loan status updates to Broker(s) and Seller. Buyer
69. shall sign all loan documents no later than three (3) days prior to the COE Date.

2g. 70. Type of Financing: ☐ Conventional ☐ FHA ☒ VA ☐ Assumption ☐ Seller Carryback ☐ _____
71. (If financing is to be other than new financing/ see attached addendum.)

2h. 72. Loan Costs: Private Mortgage Insurance is required for certain types of loans and shall be paid by Buyer at COE in a
73. manner acceptable to lender. The following may be paid by either party:

74. Discount points shall be paid by: ☒ Buyer ☐ Seller ☐ Other _____

75. Discount points shall not exceed: _____ total points (Does not include loan origination fee)

76. A.L.T.A. Lender Title Insurance Policy shall be paid by ☐ Buyer ☐ Seller

77. Loan Origination Fee (Not to exceed _____ % of loan amount) shall be paid by ☐ Buyer ☐ Seller

78. Appraisal Fee, when required by lender, shall be paid by ☒ Buyer ☐ Seller ☐ Other see section 8A of loan

2i. 79. Other Loan Costs: In the event of an FHA or VA loan, Seller agrees to pay up to $ _____ of loan
80. costs not permitted to be paid by the Buyer. In addition to the other costs Seller has agreed to pay herein. In addition, for VA
81. loans, Seller agrees to pay the escrow fee. All other costs of obtaining the loan shall be paid by the Buyer.

Initials: [handwritten]
SELLER    SELLER

©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05

Initials: [handwritten]
BUYER    BUYER

Page 2 of 9

Tierra Antigua Realty, 7423 E Tanque Verde Road, Tucson AZ 85715 Phone: (520) 290-2335 Fax: (520) 382-3300

SEP-20-2009 08:48 PM

2j. 82. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in
83. the LSR and shall only make any such changes without the prior written consent of Seller if such changes do not adversely
84. affect Buyer's ability to obtain loan approval without conditions, increase Seller's closing costs, or delay COE.

2k. 85. **FHA Notice (FHA Buyer Initials Required):** HUD does not warrant the condition of the property. By initialing below, Buyer acknowl-
86. edges receipt of Form HUD-92564-CN, "For Your Protection: Get a Home Inspection." Buyer further acknowledges that such
87. form was signed at or before the Contract date. Signed HUD-92564-CN is attached and made a part of this Purchase Contract.

88.                                                    **(FHA BUYER'S INITIALS REQUIRED)** ____ BUYER ____ BUYER

# 3. TITLE AND ESCROW

3a. 89. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
90. terms of this Contract shall be:

91. __TSA__ / Catalina Title     __Pam Cox__  __(520) 618-7790__ / __901-1952__
   ESCROW/TITLE COMPANY          ESCROW OFFICER      PHONE                 FAX

3b. 92. **Title and Vesting:** Buyer will take title as determined before COE. Taking title may have significant legal, estate planning
93. and tax consequences. Buyer should obtain legal and tax advice.

3c. 94. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller
95. directly, addressed pursuant to 8t and 9c or as otherwise provided, a Commitment for Title Insurance together with
96. complete and legible copies of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title
97. Commitment"), including but not limited to Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and
98. easements. Buyer shall have five (5) days after receipt of the Title Commitment and after receipt of notice of any
99. subsequent exceptions to provide notice to Seller of any items disapproved. Seller shall convey title by general warranty
100. deed. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's Title
101. Insurance Policy, or if not available, an ALTA Residential Title Insurance Policy ("Plain Language"/"1-4 units") or, if not
102. available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire extended coverage
103. at Buyer's own additional expense.

3d. 104. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and
105. address of the Buyer to any homeowner's association in which the Premises is located. (ii) If the Escrow Company is also
106. acting as the title agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to the
107. Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer and Seller for
108. any losses due to fraudulent acts or breach of escrow instructions by the Escrow Company. (iii) All documents necessary to
109. close this transaction shall be executed promptly by Seller and Buyer in the standard form used by Escrow Company. Escrow
110. Company shall modify such documents to the extent necessary to be consistent with this Contract. (iv) Escrow Company
111. fees, unless otherwise stated herein, shall be allocated equally between Seller and Buyer. (v) Escrow Company shall send
112. to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer and Broker(s). (vi) Escrow
113. Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii) If an Affidavit of
114. Disclosure is provided, Escrow Company shall record the Affidavit at COE.

3e. 115. **Tax Prorations:** Real property taxes payable by the Seller shall be prorated to COE based upon the latest tax information available.

3f. 116. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with Escrow
117. Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions of this Contract
118. in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against any claim, action
119. or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or relating in any way to
120. the release of Earnest Money.

3g. 121. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of the COE, including homeowner's
122. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on
123. encumbrances, and service contracts, shall be prorated as of COE or ☐ Other: _____

3h. 124. **Assessment Liens:** The amount of any assessment, other than homeowner's association assessments, that is a lien as of
125. the COE, shall be ☒ paid in full by Seller ☐ prorated and assumed by Buyer. Any assessment that becomes a lien after
126. COE is the Buyer's responsibility.

3i. 127. **IRS and FIRPTA Reporting:** Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to
128. complete, sign, and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident
129. alien pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller acknowledge that if the Seller
130. is a foreign person, the Buyer must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

Initials __MOS__ / __SPS__          >ARIZONA ASSOCIATION OF REALTORS® Form RPC 6/05          Initials __MW__ / ____
          SELLER   SELLER                                                                              BUYER   BUYER

                                                    Page 3 of 9

# 4. DISCLOSURES

**4a. 131. Seller Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR SPDS form to the Buyer within five
132. (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection Period
133. or five (5) days after receipt of the SPDS, whichever is later.

**4b. 134. Insurance Claims History:** Seller shall deliver to Buyer a written five-year insurance claims history regarding Premises (or
135. a claims history for the length of time Seller has owned the Premises if less than five years) from Seller's insurance
136. company or an insurance support organization or consumer reporting agency, or if unavailable from these sources, from
137. Seller, within five (5) days after Contract acceptance. (Seller may obscure any reference to date of birth or social
138. security number from the document). Buyer shall provide notice of any items disapproved within the Inspection Period or
139. five (5) days after receipt of the claims history, whichever is later.

**4c. 140. Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, the Seller shall: (i) notify the Buyer of any known
141. lead-based paint ("LBP") or LBP hazards in the Premises; (ii) provide the Buyer with any LBP risk assessments or
142. inspections of the Premises in the Seller's possession; (iii) provide the Buyer with the Disclosure of Information on
143. Lead-Based Paint and Lead-based Paint Hazards, and any report, records, pamphlets, and/or other materials referenced
144. therein, including the pamphlet "Protect Your Family from Lead in Your Home" (collectively "LBP Information"). Buyer shall return
145. a signed copy of the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards to Seller prior to COE.

146. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
147. assessments or inspections during Inspection Period.
148. ☐ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days or
149. _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for
150. the presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP
151. Information or five (5) days after expiration of the Assessment Period cancel this Contract.

152.          If Premises were constructed prior to 1978, BUYER'S INITIALS REQUIRED
153.          If Premises were constructed in 1978 or later, BUYER'S INITIALS REQUIRED



**4d. 154. Affidavit of Disclosure:** If the Premises is located in an unincorporated area of the county, and five or fewer parcels of
155. property other than subdivided property are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in
156. the form required by law to the Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit
157. of Disclosure items disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure,
158. whichever is later.

**4e. 159. Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made
160. herein, in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already
161. obligated by Section 5a, or otherwise by this Contract or any amendments hereto, to correct or repair the changed item
162. disclosed, Buyer shall be allowed five (5) days after delivery of such notice to provide notice of disapproval to Seller.

# 5. WARRANTIES

**5a. 163. Seller Warranties:** Seller warrants and shall maintain and repair the Premises so that, at the earlier of possession or COE: (i) all
164. heating, cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter
165. systems, cleaning systems, and heaters, if any), free-standing range/oven, and built-in appliances will be in working
166. condition; (ii) all other agreed upon repairs and corrections will be completed pursuant to Section 6j; (iii) the Premises,
167. including all additional existing personal property included in the sale, will be in substantially the same condition as on the date of
168. Contract acceptance; and (iv) all personal property not included in the sale and all debris will be removed from the Premises.

**5b. 169. Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects
170. and any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely
171. affect the consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for
172. all labor, professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding
173. the COE in connection with the construction, alteration, or repair of any structure on or improvement to the Premises. Seller
174. warrants that the information regarding connection to a sewer system or on-site wastewater treatment facility (conventional
175. septic or alternative) is correct to the best of Seller's knowledge.

PAGE 5

**5c.** 176. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
177. the Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or
178. COE, Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts
179. the Premises. Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises
180. except disclosed as follows: _____ None _____
181. _____

# 6. DUE DILIGENCE

**6a.** 182. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____ days after Contract
183. acceptance. During the Inspection Period, Buyer, at Buyer's expense, shall (i) conduct all desired physical, environmental,
184. and other types of inspections and investigations to determine the value and condition of the Premises; (ii) make inquiries
185. and consult government agencies, lenders, insurance agents, architects, and other appropriate persons and entities
186. concerning the suitability of the Premises and the surrounding area; (iii) investigate applicable building, zoning, fire, health,
187. and safety codes to determine any potential hazards, violations or defects in the Premises; and (iv) verify any material multiple
188. listing service ("MLS") information. If the presence of sex offenders in the vicinity or the occurrence of a disease, natural death,
189. suicide, homicide or other crime on or in the vicinity is a material matter to the Buyer, it must be investigated by the Buyer
190. during the Inspection Period. Buyer shall keep the Premises free and clear of liens, shall indemnify and hold Seller
191. harmless from all liability, claims, demands, damages, and costs, and shall repair all damages arising from the inspections.
192. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection reports concerning the Premises
193. obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer Advisory* provided by AAR to
194. assist in Buyer's due diligence inspections and investigations.

**6b.** 195. **Square Footage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH
196. THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A
197. MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.

**6c.** 198. **Wood-Destroying Organism or Insect Inspection:** IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR
199. INSECTS (SUCH AS TERMITES) ARE A MATERIAL MATTER TO THE BUYER, THESE ISSUES MUST BE
200. INVESTIGATED DURING THE INSPECTION PERIOD. The Buyer shall order and pay for all wood-destroying organism or
201. insect inspections performed during the Inspection Period. If the lender requires an updated Wood-Destroying Organism or
202. Insect Inspection Report prior to COE, it will be performed at Buyer's expense.

**6d.** 203. **Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the
204. Inspection Period. If the Premises are situated in an area identified as having any special flood hazards by any
205. governmental entity, the lender may require the purchase of flood hazard insurance. Special flood hazards may also affect
206. the ability to encumber or improve the Premises.

**6e.** 207. **Insurance:** IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO THE BUYER, BUYER SHALL APPLY FOR
208. AND OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR
209. THE PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD. Buyer understands that
210. any homeowner's, fire, casualty, or other insurance desired by Buyer or required by lender should be in place at COE.

**6f.** 211. **Sewer or On-site Wastewater Treatment System:** The Premises are connected to a:
212.    ☐ Sewer system;    ☐ septic system;    ☐ alternative system.

213. IF A SEWER CONNECTION IS A MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE
214. INSPECTION PERIOD. If the Premises are served by a septic or alternative system, the AAR On-site Wastewater Treatment
215. Facility Addendum is incorporated herein by reference.
216.                                           **(BUYER'S INITIALS REQUIRED)**    _____  _____
                                                                                  BUYER   BUYER

**6g.** 217. **Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state,
218. county, and municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance
219. with said regulations prior to occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming
220. Pool, Buyer acknowledges receipt of the Arizona Department of Health Services approved private pool safety notice.

221.                                           **(BUYER'S INITIALS REQUIRED)**    _____  _____
                                                                                  BUYER   BUYER

PAGE 6

**6h. 222. BUYER ACKNOWLEDGMENT:** BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT
223. QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE
224. SURROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO
225. ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE
226. PREMISES AND THE SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKER'S EXPERTISE AND
227. LICENSING, BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY
228. DEFECTS OR CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.

229.                                  **(BUYER'S INITIALS REQUIRED)**
                                                                        BUYER        BUYER

**6i. 230. Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any
231. items disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall
232. conduct all desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items
233. disapproved shall be provided in a single notice.

**6j. 234. Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller
235. notice of the items disapproved and state in the notice that Buyer elects to either:
236.             (1) immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
237.             (2) provide the Seller an opportunity to correct the items disapproved, in which case:
238.                     (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of
239.                         items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
240.                         conclusively be deemed Seller's refusal to correct any of the items disapproved.
241.                     (b) If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any
242.                         repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs
243.                         to Buyer three (3) days or _____ days prior to COE Date.
244.                     (d) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel
245.                         this Contract within five (5) days after delivery of Seller's response or after expiration of the time for
246.                         Seller's response, whichever occurs first, and all Earnest Money shall be released to Buyer. If Buyer does
247.                         not cancel this Contract within the five (5) days as provided, Buyer shall close escrow without correction
248.                         of those items that Seller has not agreed in writing to correct.

249. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
250. extend response times or cancellation rights.

251. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
252. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
253. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

**6k. 254. Notice of Non-Working Warranted Items:** Buyer shall provide Seller with notice of any non-working warranted item(s) of
255. which Buyer becomes aware during the Inspection Period or the Seller warranty for that item(s) shall be waived. Delivery of
256. such notice shall not affect Seller's obligation to maintain or repair the warranted item(s).

**6l. 257. Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase.
258. The parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service
259. fees and most plans exclude pre-existing conditions.

260.       ☑ A Home Warranty Plan will be ordered by ☑ Buyer or ☐ Seller with the following optional coverage
261.       ___STANDARD___ , to be issued by ___AHS___ at a cost not to exceed
262.       $___450.00___ , to be paid for by ☐ Buyer ☑ Seller
263.       ☐ Buyer declines the purchase of a Home Warranty Plan.

**6m. 264. Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for the
265. purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in
266. working condition and that the Premises is in substantially the same condition as of the date of Contract acceptance. If Buyer does
267. not conduct such walkthrough(s), Buyer releases Seller and Broker(s) from liability for any defects that could have been discovered.

**6n. 268. Seller's Responsibility Regarding Inspections and Walkthroughs:** Seller shall make the Premises available for all
269. inspections and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on,
270. including any propane, until COE to enable Buyer to conduct these inspections and walkthrough(s).

# 7. REMEDIES

**7a. 271. Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
272. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If
273. the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall
274. become a breach of Contract.

**7b. 275. Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
276. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative
277. Dispute Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages
278. in the event of Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at
279. Seller's option, accept the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from
280. Buyer's failure to deliver the notice required by Section 2a, or Buyer's inability to obtain loan approval due to the waiver of
281. the appraisal contingency pursuant to Section 2c, Seller shall exercise this option and accept the Earnest Money as Seller's
282. sole right to damages. An unfulfilled contingency is not a breach of Contract.

**7c. 283. Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating
284. to this Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs
285. shall be paid equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved
286. disputes or claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and
287. cooperate in the scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be
288. submitted to the American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate
289. Industry. The decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator
290. may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding
291. arbitration within thirty (30) days after the conclusion of the mediation conference by notice to the other and in such event
292. either party shall have the right to resort to court action.

**7d. 293. Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought
294. in the Small Claims Division of an Arizona Justice Court (up to $2,500) so long as the matter is not thereafter transferred or
295. removed from the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed
296. of trust, mortgage, or agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a
297. mechanic's lien; or (v) any matter that is within the jurisdiction of a probate court. Further, the filing of a judicial action to
298. enable the recording of a notice of pending action ("lis pendens"), or order of attachment, receivership, injunction, or other
299. provisional remedies shall not constitute a waiver of the obligation to submit the claim to ADR, nor shall such action
300. constitute a breach of the duty to mediate or arbitrate.

**7e. 301. Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating
302. to this Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney
303. fees, expert witness fees, fees paid to investigators, and arbitration costs.

# 8. ADDITIONAL TERMS AND CONDITIONS

**8A. 304.** _____
305. _Seller to pay Buyer Closing Cost_
306. _up to 3% and to include inpounds_
307. _____
308. _and Pre-paids._
309. _____
310. _____
311. _____
312. _____
313. _____
314. _____
315. _____

Initials: _____ / _____          Initials: _____ / _____
SELLER      SELLER                      BUYER      BUYER

©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05

Terra Antigua Realty, 7423 E Tanque Verde Road, Tucson AZ 85715  Phone: (520) 290-3336  Fax: (520) 362-3300

**8b. 316. Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or
317. possession, whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on
318. the Seller, provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the
319. purchase price, either Seller or Buyer may elect to cancel the Contract.

**8c. 320. Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

**8d. 321. Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

**8e. 322. Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations
323. described herein.

**8f. 324. Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
325. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
326. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
327. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
328. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
329. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

**8g. 330. Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract. This Contract
331. and any other documents required by this Contract may be executed by facsimile or other electronic means and in any number of counterparts,
332. which shall become effective upon delivery as provided for herein, except that the Lead-Based Paint Disclosure Statement may not be signed
333. in counterpart. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

**8h. 334. Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m.

**8i. 335. Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event
336. from which the time period begins to run is not included and the last day of the time period is included. Contract acceptance
337. occurs on the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the
338. appropriate Broker. Acts that must be performed three days prior to the COE Date must be performed three full days prior
339. (i.e., if COE Date is Friday the act must be performed by 11:59 p.m. on Monday).

**8j. 340. Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
341. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
342. signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

**8k. 343. Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
344. any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract.

**8l. 345. Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by
346. delivering notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become
347. effective immediately upon delivery of the cancellation notice.

**8m. 348. Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in
349. writing and deemed delivered and received when (i) hand-delivered, (ii) sent via facsimile transmission, (iii) sent via
350. electronic mail, if email addresses are provided herein, or (iv) sent by recognized overnight courier service, and addressed
351. to Buyer as indicated in Section 8r, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

**8n. 352. Earnest Money:** Earnest Money is in the form of: ☐ Personal Check ☐ Other:
353. If applicable, Earnest Money has been received by Broker named in Section 8r and upon acceptance of this offer will be
354. deposited with ☐ Escrow Company ☐ Broker's Trust Account

**8o. 355. Release of Broker(s):** Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this
356. transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,
357. boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,
358. governmental regulations, insurance or any other matter relating to the value or condition of the Premises.
359.
                              (BUYER'S INITIALS REQUIRED)   _____ / _____
                                                              BUYER      BUYER

**8p. 360. Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and
361. a signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8r
362. by _September 21st_ , _2009_ at _5_ ☐ a.m. ☑ p.m., Mountain Standard Time. Buyer
363. may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
364. date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

**8q. 365. THIS CONTRACT CONTAINS NINE PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE THAT**
366. **YOU HAVE RECEIVED AND READ ALL NINE PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.**

Initials: _____ / _____   ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05   Initials: _____ / _____
         SELLER   SELLER                                                             BUYER    BUYER

QSR69

PAGE 9

**8r. 367. Broker on behalf of Buyer:**

368. Monica M. Yrigoyen 14164                   Tierra Antigua Realty          266601
      PRINT SALESPERSON'S NAME    AGENT CODE          PRINT FIRM NAME              FIRM CODE

369.    7423 E Tanque Verde Road                   Tucson          AZ      85715
      FIRM ADDRESS                                CITY           STATE    ZIP CODE

370. 520-471-4711  520-382-3300      Myrigoyen 65 @ yahoo.com
      TELEPHONE     FAX                          EMAIL

**8s. 371. Agency Confirmation:** The Broker named in Section 8r above is the agent of (check one):

372. [X] the Buyer;  [ ] the Seller; or  [ ] both the Buyer and Seller

**8t. 373.** The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of a
374. copy hereof including the Buyer Attachment.

375. _(signature)_                    9/20/09
      BUYER'S SIGNATURE              MO/DA/YR          BUYER'S SIGNATURE              MO/DA/YR

369. 811 S. Houghton Rd. #158-203
      ADDRESS                                          ADDRESS

370. Tucson                AZ   85247
      CITY                  STATE  ZIP            CITY                      STATE    ZIP

## 9. SELLER ACCEPTANCE

**9a. 378. Broker on behalf of Seller:**

379. _____
      PRINT SALESPERSON'S NAME    AGENT CODE          PRINT FIRM NAME              FIRM CODE

380. _____
      FIRM ADDRESS                                               STATE    ZIP CODE

381. _____
      TELEPHONE     FAX                          EMAIL

**9b. 382. Agency Confirmation:** The Broker named in Section 9a above is the agent of (check one):

383. [ ] the Seller; or  [ ] both the Buyer and Seller

**9c. 384.** The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
385. copy hereof and grant permission to Broker named on Section 9a to deliver a copy to Buyer.

386. [ ]  Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer.
387. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

388. MICHAEL B. SPARLIN        9/22/09      SHARON J. SPARLIN          9/22/09
      SELLER'S SIGNATURE          MO/DA/YR          BUYER'S SIGNATURE              MO/DA/YR

389. Michael B. Sparlin                    Sharon J. Sparlin
      SELLER'S NAME PRINTED                         SELLER'S NAME PRINTED

390. 9151 E. SHOWCASE LANE                 PRACTICE GREEN LLC
      ADDRESS                                       ADDRESS

391. Tucson  AZ  85749                     By: Sharon Sparlin  MBR
      CITY, STATE, ZIP CODE                              SHARON SPARLIN

392. [ ] OFFER REJECTED BY SELLER: _____
             MONTH        DAY        YEAR              (SELLER'S INITIALS)

For Broker Use Only:

Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____
                                       MO/DA/YR

This form is available for use by the entire real estate industry. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. ©Arizona Association of REALTORS® 2005 • This form is available through your local association of REALTORS® • Form RPC 5/05

Initials: MBS / SS            ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05       Initials: ___ / ___
      SELLER  SELLER                                                              BUYER   BUYER



**Tierra Antigua**
R E A L T Y

## Short Sale Disclosure and Guidelines Agreement
### For the Buyer's Agent and Buyer

Property Address  491 S. Douglas Wash Road, Vail, AZ

## THIS DOCUMENT MUST BE SIGNED BY THE BUYER AND THE BUYER'S AGENT AND SUBMITTED WITH ANY OFFERS TO PURCHASE THE ABOVE REFERENCED PROPERTY

1. Buyer acknowledges they are entering into a legally binding contract with the Seller. Contract is contingent upon an agreement between the Seller and Seller's Creditors.
2. Buyer acknowledges it could take weeks or months to obtain Creditors approval of a Short Sale.
3. Buyer's Agent will contact Listing Agent before submitting an offer.
4. Buyer's Agent will incorporate into Buyer's offer, the current Short Sale Addendum, As-Is Addendum and LSR.
5. Closing Cost: When requesting the Seller to pay for negotiable expenses, thus lowering the Seller's net, you may be limiting your opportunity for an accepted offer.
6. Contingency offers are not acceptable due to the limited time constraints.
7. Coop commissions will be paid per MLS rules, unless otherwise agreed upon by Brokers in a separate written agreement.
8. When contract is fully executed (signed by all parties) MLS status will be changed to Active Contingent within 48 hours.
9. Subsequent Buyers will be in back up position, Buyer's Agent to use the Additional Clause Addendum. All Back up contracts will be presented to the Creditors for consideration. See line 13-15 of the Short Sale Addendum 8/08
10. If Seller and Creditors come to an agreement, notice will be sent to Buyer's Agent immediately "Agreement Notice". All time periods to commence.
11. Buyer shall promptly open Escrow and deposit the earnest monies once the "Agreement Notice" is received by the Listing Agent (Line 27-28 Short Sale Addendum 8/08). Listing Agent will utilize the "Early Bird" option for the Pre-HUD and preliminary title reports.

_____    9/20/09    _____
Buyer                       Date        Buyer                       Date

Maria M. Yniguez    9/20/09    Tierra Antigua
Buyer's Agent        Date      Firm Name

| For Broker's Use Only: | | | |
|---|---|---|---|
| Brokerage file/Log No | Manager's Initials | Broker's Initials | Date |

Tierra Antigua Realty - Version 8/08



# H.O.A. Condominium/
# Planned Community Addendum

*The printed portion of this form has been approved by the Arizona Association of REALTORS®.*

This is an addendum to the Contract dated _____ 9/20/09 _____ between the following parties:

Seller: _____

Buyer: **MARK LADY**

Premises Address: **491 S. DOUGLAS Wash Rd., VAIL, AZ 85641**

If the Premises are located within a homeowner's association or a condominium/planned community:

**A.** Dues and Fees: The current regular association dues are: $ _____ monthly, or $ **22.00** , **qtrly** ;

**B.** Additional homeowner's association fees are: $ _____ monthly, or $ _____ ;

**C.** Any current homeowner's association assessment which is a lien as of Close of Escrow to be: ☑ paid in full by Seller ☐ prorated and assumed by Buyer. Any assessment that becomes a lien after the Close of Escrow is the Buyer's responsibility.

**D.** Any transfer fees charged by a homeowner's association(s) shall be paid by ☑ Seller ☐ Buyer ☐ Other _____

**E.** Any inspection, certification or resale disclosure statement fee charged by the HOA for the cost of providing the resale information required by law shall be paid by Seller.

**F.** Other Fees: A homeowner's association may require fees, deposits or other payment at COE. These charges vary and may be labeled as community reserve, asset preservation, capital reserve, working capital, community enhancement or future improvement fees, payments, deposits or otherwise. Any of these fees or deposits or similar payment required by a homeowner's association upon the conveyance of the Premises shall be paid by ☑ Seller ☐ Buyer ☐ Other _____

**G.** If the homeowner's association has less than 50 units, no later than ten (10) days after Contract acceptance, the Seller shall provide in writing to Buyer the information described below as required by Arizona law.

**H.** If the homeowner's association has 50 or more units, Seller shall furnish notice of pending sale that contains the name and address of the Buyer to the homeowners' association within five (5) days after Contract acceptance and pursuant to Section 3d of the Contract has instructed Escrow Company to provide such notice on Sellers behalf. The association is obligated by Arizona law to provide the information described below to Buyer within ten (10) days after receipt of Seller's notice.

**I.** Buyer is allowed five (5) days after receipt of the information from the Seller or homeowner's association to provide written notice to Seller of any items disapproved.

_____  9/24/09          _____  9/22/09
BUYER'S SIGNATURE        MO/DA/YR           SELLER'S SIGNATURE        MO/DA/YR

_____  9/22/09          _____  9/22/09
SELLER'S SIGNATURE       MO/DA/YR           SELLER'S SIGNATURE        MO/DA/YR

**Information required by law to be provided:**
1. A copy of the bylaws and the rules of the association.
2. A copy of the declaration of Covenants, Conditions and Restrictions ("CC&Rs").
3. A dated statement containing:
   (a) The telephone number and address of a principal contact for the association, which may be an association manager, an association management company, an officer of the association or any other person designated by the board of directors.
   (b) The amount of the common regular assessment and the unpaid common regular assessment, special assessment or other assessment, fee or charge currently due and payable from the Seller.
   (c) A statement as to whether a portion of the unit is covered by insurance maintained by the association.
   (d) The total amount of money held by the association as reserves.
   (e) If the statement is being furnished by the association, a statement as to whether the records of the association reflect any alterations or improvements to the unit that violate the declaration. The association is not obligated to provide information regarding alterations or improvements that occurred more than six years before the proposed sale. Seller remains obligated to disclose alterations or improvements to the Premises that violate the declaration. The association may take action against the Buyer for violations apparent at the time of purchase that are not reflected in the association's records.
   (f) If the statement is furnished by the Seller, a statement as to whether the Seller has any knowledge of any alterations or improvements to the unit that violate the declaration.
   (g) A statement of case names and case numbers for pending litigation with respect to the Premises or the association.
4. A copy of the current operating budget of the association.
5. A copy of the most recent annual financial report of the association. If the report is more than ten pages, the association may provide a summary of the report in lieu of the entire report.
6. A copy of the most recent reserve study of the association, if any.
7. Any other information required by law.
8. A statement for Buyer acknowledgement and signature as required by Arizona Law.

EXHIBIT 9
CASE 10-503

# SPARLIN PROPERTIES
7922 S Clarkson Court-Property "A"
491 S Douglas Wash Rd-Property "C"
SEC filings – http://www.secinfo.com/drjtj.u41s.html#1stPage
Case #10-503



F. ANN RODRIGUEZ, RECORDER
RECORDED BY: JSH
      DEPUTY RECORDER
      0497      EAST-2

W
MICHAEL SPARLIN
9151 E SHOWCASE LN
TUCSON AZ  85749



| | |
|---|---|
| DOCKET: | 13770 |
| PAGE: | 361 |
| NO. OF PAGES: | 2 |
| SEQUENCE: | 20100540156 |
| | 03/22/2010 |
| NOTICE | 13:46 |
| MAIL | |
| AMOUNT PAID  $ | 10.00 |

Tucson, AZ  85749

*EXHIBIT 10*
*CASE 10-503*

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ 85284
CERTIFIED MAIL # *7009 2250 0001 7029 0468*

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA 90060-0875
CERTIFIED MAIL # *7009 2250 0001 729 0437*

Dated:  February 26, 2010

Re:  Deed of Trust Record:  Docket 12981, Page 7551, Sequence 20070201026
     Record Date January 30, 2007; APN: 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; Original Loan #8201667
     Commonly known address:  491 S. DOUGLAS WASH ROAD, VAIL, AX  85641

## <u>NOTICE OF DEFAULT</u>

To:  All parties addressed above

**TRUSTOR(S)/GRANTOR(S):** Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby
give Notice that the above listed parties have failed to provide Full Disclosure of the Mortgage
Loan Process noted above, as required by law and as requested in the CONSTRUCTIVE LEGAL
NOTICE OF LAWFUL DEBT VALIDATION DEMAND dated January 19, 2010 and received the
above named parties on January 20, 2010.

TRUSTEES/GRANTEES were provided 20 business days under Federal Law to respond/answer
to the CONSTRUCTIVE LEGAL NOTICE which fully addressed the issue of full disclosure of the
entire alleged loan mortgage/deed of trust process, yet failed to respond in the time specified.
They have had since January 2, 2007 to provide full disclosure of the Mortgage Loan Process as
required under Federal Law.  They have failed to comply.

## <u>LET IT BE KNOWN</u>
All the above named "Trustee, Successor Trustee(s), Beneficiary(s)", or Assigns, Substitutes,
known or unknown are hereby in DEFAULT for their failure to provide FULL DISCLOSURE to
Michael Benson Sparlin and Sharon Jeanette Sparlin, and this DEFAULT is cause for canceling
the entire alleged loan mortgage/deed of trust process and rescinding of said signatures of
Michael Benson Sparlin and Sharon Jeanette Sparlin.

---

## ACTUAL AND CONSTRUCTIVE NOTICE

All Trustee(s), Successor Trustee(s), and Beneficiary(ies) named in Deed of Trust by Trustor(s) dated January 16, 2007, and recorded January 30 , 2007 under Deed of Trust Instrument Docket 12981, Page 7551, Sequence 20070201026  are hereby removed/released/dismissed of all duties, expressed or implied, effective immediately. The aforesaid Trustee(s), Successor Trustee(s), and Beneficiary(s) are expressly directed to **CEASE** and **DESIST** any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number. Any continued actions of any nature against the property described above may result in legal actions being taken.


_____          _____
Michael Benson Sparlin                              Sharon Jeanette Sparlin


State of **ARIZONA**                    )
                                                   ) ss
County of Pima                         )

**Subscribed and sworn to** (or affirmed) before me on this _26th_ day of
_February_ , 2010, by _MICHAEL BENSON SPARLIN AND SHARON JEANETTE SPARLIN_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.


_____
Notary

_7/24/2013_
My commission expires

(seal)

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: JSH
          DEPUTY RECORDER
          0497     EAST-2

W
MICHAEL SPARLIN
9151 E SHOWCASE LN
TUCSON AZ  85749



| | |
|---|---|
| DOCKET: | 13770 |
| PAGE: | 363 |
| NO. OF PAGES: | 3 |
| SEQUENCE: | 20100540157 |
| | 03/22/2010 |
| NOTICE | 13:46 |
| MAIL | |
| AMOUNT PAID | $   10.00 |

Tucson, AZ  85749

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ  85284
CERTIFIED MAIL # 70092250000170290468

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA  90060-0875
CERTIFIED MAIL # 70092250000172290437

Dated:  February 26, 2010

Re: Deed of Trust Record:  Docket 12981, Page 7551, Sequence 20070201026
    Record Date January 30, 2007; APN: 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; Original Loan #8201667
    Commonly known address: 491 S. DOUGLAS WASH ROAD, VAIL, AZ 85641

## NOTICE OF RIGHT TO CANCEL
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent


Attention:  Alleged Lender

**Parties:**  MICHAEL BENSON SPARLIN/SHARON JEANETTE SPARLIN (Alleged Borrower(s)
hereinafter "**Borrower**") and UNIVERSAL AMERICAN MORTGAGE COMPANY and
COUNTRYWIDE (Alleged Lender(s) hereinafter "**Lender**")

This communication will serve as our **NOTICE OF RIGHT TO CANCEL** dated February 26,
2010.  TILA (Trust in Lending Act, 15 USC § 1601 et seq; 12 CFR Part 226) allows three (3)
years to review Disclosure Documents.  The referenced 'Three Day Right to Cancel' must have a
trigger to begin.  That trigger is when the Lender has provided the Borrower with <u>ALL</u> of the
required Disclosures under TILA, and that the same are true, complete, accurate, and timely
provided.

Being as the entire purported loan/mortgage process and Deed of Trust referenced herein and
throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and
fraudulent misrepresentation, the borrower has other recourse, right, and cause of action under
numerous state and federal statutes.  Acts of fraud taint/void everything it touches as the US
Supreme Court has declared:  "**There is no question of the general doctrine that fraud**

vitiates the most solemn contracts, documents, and even judgments." (<u>United States v. Throckmorton, 98 U.S. 61</u>)

To this date, Lender has <u>never</u> provided Borrower with true, complete, accurate or timely documents as required. <u>ONLY AFTER</u> such provision has been done, can the '3 DAY RIGHT TO CANCEL' period begin. If the required full Disclosure(s) have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose.

The records thus far evidence that Borrower has requested to cancel within the stipulated three year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal Law, which have never been provided.

A close perusal/audit of Borrower mortgage documents has revealed certain Disclosure Violations; and that the Borrower has the remedial right and remedy (UCC 1-201 (32) (34)), inter alia, to invoke their Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lenders, Successor and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, **this written Notice of communication is provided in lieu thereof.**

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's home within twenty (20) business days. The Lender must also return any money, interest, fee and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered – then he/she/they may offer its 'Reasonable Value'.

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within twenty (2) business days, Borrower may then regain/acquire all rights to clear title and re-conveyance under Federal Law and provisions of TILA.

Additionally, Borrower has the right to offer Lender a Reasonable Value. However, the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages i.e., triple the amount of the interest the bank stood to fraudulently make off of the mortgage/loan transaction. Therefore, the Borrowers hereby in good faith make the following offer: Borrowers will forgive UNIVERSAL AMERICAN MORTGAGE COMPANY any liability incurred by its wrongful actions, provided UNIVERSAL AMERICAN MORTGAGE COMPANY rightfully forgive Borrower the full amount of mortgage/credit you fraudulently allege to have given. In addition, Borrower make the one time demand of $175,500 for any loss, damage, and injury they have sustained; and, that UNIVERSAL AMERICAN MORTGAGE COMPANY also remove all/any negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) business days of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein and throughout.

Sincerely,


*Michael Benson Sparlin*

**Michael Benson Sparlin** (expressly all rights reserved)
Third Party Interest Intervener, live breathing man/woman
**Real Party in Interest.**


State of **ARIZONA**                )
                                     ) ss
County of Pima                       )

**Subscribed and Affirmed** and having been duly sworn to at

_Tucson_ _____ (town/city) before me, a Notary Public for the

said county and state as above noted, do hereby state that the living man/woman,

Michael Benson Sparlin, personally appeared before me and signed the foregoing

instrument.

WITNESS my hand and official seal this _26th_ day of _February_ ,2010.


*Wanda E Hammonds*                                    (seal)
Notary

_7-24-2013_
My commission expires

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: JSH
               DEPUTY RECORDER
               0497    EAST-2

W

MICHAEL SPARLIN
9151 E SHOWCASE LN
TUCSON AZ  85749



| | |
|---|---|
| DOCKET: | 13770 |
| PAGE: | 369 |
| NO. OF PAGES: | 2 |
| SEQUENCE: | 20100540159 |
| | 03/22/2010 |
| REV | 13:46 |
| MAIL | |
| AMOUNT PAID | $   10.00 |

Tucson, AZ 85749

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ 85284
CERTIFIED MAIL # *70092250000170290468*

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA  90060-0875
CERTIFIED MAIL # *70092250000170290437*

Dated: February 26, 2010

Re: Deed of Trust Record:  Docket 12981, Page 7551, Sequence 20070201026
     Record Date January 30, 2007; APN: 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; Original Loan #8201667
     Commonly known address:  491 S. DOUGLAS WASH ROAD, VAIL, AZ 85641

## NOTICE OF REVOCATION OF POWER OF ATTORNEY

**To:  All parties addressed above**

Michael Benson Sparlin and Sharon Jeanette Sparlin DO HEREBY DECLARE:

That, due to the discovery of various elements of fraud, fraudulent inducement, fraudulent
misrepresentation, entrapment, and nondisclosure resulting in the deprivation of our property
by UNIVERSAL AMERICAN MORTGAGE COMPANY and/or by any of its agents and/or assignees;
and, after a recent review/audit and a close perusal of the purported Loan, Trust Deed, and
Security Agreement records – We, Michael Benson Sparlin and Sharon Jeanette Sparlin do
hereby refuse to knowingly accept, or otherwise participate in ANY part of fraud and other
wrongful actions involving the purported Promissory Note/Security Instrument/Trust Deed; and,
further, do hereby revoke, rescind, and terminate all our signatures relating to any/all said
deeds, notes, and agreements from their inception.

Furthermore, We, Michael Benson Sparlin and Sharon Jeanette Sparlin, do hereby revoke,
terminate, and rescind all Powers of Attorney, in fact or otherwise, previously assigned by us,
implied in law, by trust or otherwise, with or without our consent and/or knowledge, as such
pertains to any property, real or personal, promissory note, deed of trust and mortgage signed
on the date of January 16, 2007 or otherwise, under Deed of Trust Record No Docket 12981,
Page 7551, Sequence 20070201026 and recorded January 30, 2007, involving the property
specifically addressed and identified as 491 S. DOUGLAS WASH ROAD, VAIL, AZ.

*Michael Benson Sparlin*   *Sharon Jeanette Sparlin*

Michael Benson Sparlin    Sharon Jeanette Sparlin

State of **ARIZONA**     )
           ) ss
County of Pima      )

**Subscribed and sworn to** (or affirmed) before me on this _21st_ day of

_FEBRUARY_____, 2010, by _MICHAEL BENSON SPARLIN AND SHARON JEANETTE SPARLIN_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.


*Wanda E Hammonds*        (seal)

Notary

_7/24/2013_

My commission expires

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: JSH
                   DEPUTY RECORDER
                   0497     EAST-2

W
MICHAEL SPARLIN
9151 E SHOWCASE LN
TUCSON AZ 85749



| | |
|---|---|
| DOCKET: | 13770 |
| PAGE: | 366 |
| NO. OF PAGES: | 3 |
| SEQUENCE: | 20100540158 |
| | 03/22/2010 |
| NOTICE | 13:46 |
| MAIL | |
| AMOUNT PAID | $ 10.00 |

Tucson, AZ 85749

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ 85284
CERTIFIED MAIL #70092250000170290468

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA 90060-0875
CERTIFIED MAIL #70092250000170290437

**TITLE SECURITY AGENCY OF ARIZONA**
6390 E. TANQUE VERDE ROAD
TUCSON, AZ 85715
CERTIFIED MAIL #70092250000170290444

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
1818 LIBRARY STREET, SUITE 300
RESTON, VIRGINIA 20190-6280
CERTIFIED MAIL #70092250000170290451

Dated: February 26, 2010

Re: Deed of Trust Record:  Docket 12981, Page 7551, Sequence 20070201026
     Record Date January 30, 2007; APN: 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; Original Loan #8201667
     Commonly known address:  491 S. DOUGLAS WASH ROAD, VAIL, AZ 85641

## <u>NOTICE OF REMOVAL OF TRUSTEE</u>

**To:  All parties addressed above**

TRUSTOR(S)/GRANTOR(S):  Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby give reference to the Deed of Trust drawn and executed by Michael Benson Sparlin and Sharon Jeanette Sparlin, as Trustor(s)/Grantor(s)/Creator(s) with further reference given to the following described real property situated in said county and state, to wit:

Lot 69 of OASIS SANTA RITA, s subdivision of Pima County, Arizona, according to the map or plat thereof of record in the office of the County Recorder of Pima County, Arizona in Book 59 of Maps and Plats at page 50 thereof; and as amended by Declaration of Scrivener's Error recorded in Docket 12656 at page 1319 and in Docket 12750 at page 27

---

The street address or other common designation, if any, of the real property described above is purported to be:  491 S. DOUGLAS WASH ROAD, VAIL, ARIZONA 85641

GRANTOR(S)/TRUSTOR(S):  Michael Benson Sparlin and Sharon Jeanette Sparlin by actual and constructive notice do hereby declare:

1. **Effective immediately**, the undersigned Michael Benson Sparlin and Sharon Jeanette Sparlin forever removes/releases/discharges all: "Trustee(s), Successor Trustee(s), Substituted Trustee, Agent(s), Servicer(s), Assign(s), Transfer(s), known and unknown.", including UNIVERSAL AMERICAN MORTGAGE COMPANY, 1725 W. GREEN TREE DRIVE, SUITE 104, TEMPE, AZ  85284 and COUNTRYWIDE, P.O. BOX 60875, LOS ANGELES, CA 90060-0875 existing under the laws of ARIZONA; and, Thereby removing and terminating the same from any/all duties and forever barring/stopping the aforesaid from any further appointments or assignments originally granted or contained within the Deeds of Trusts concerned herein.

2. **Effective immediately**, the undersigned Michael Benson Sparlin and Sharon Jeanette Sparlin forever Revokes/Cancels/Voids/Rescinds any/all duties, appointments, or assignments originally granted by Power of Attorney, authority, or otherwise granted/granting, and/or signs/signatures, assigned/assigning to any party(ies) including the alleged lender and successors, known and unknown including but not limited to: UNIVERSAL AMERICAN MORTGAGE COMPANY, COUNTRYWIDE HOME LOANS, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., addressed named above; Thereby removing and terminating the same from any/all duties and forever barring/stopping the aforesaid of any further appointments of any/all "TRUSTEE(S)", "SUCCESSOR TRUSTEE(S)", "SUBSTITUTES", or "BENEFICIARY(IES)".

## <u>LET IT BE KNOWN</u>

All the above named "Trustee, Successor Trustee(s), Beneficiary(ies)", or Assigns, Substitutes, known or unknown in clauses 1 and 2 above, are hereby directed to immediately **CEASE** and **DESIST** any further actions through said appointments/assignments granted in or from Record Docket 12981, Page 7551, Sequence 20070201026, dated January 30, 2007.  **ANY** such continued or further action by <u>ANY</u> of the above named parties may result in legal actions against them.

**Be it further known**, GRANTOR(S)/TRUSTOR(S):  Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby declare that:  Effective immediately, all duty(s) and benefit(s) of "Trustee" and "Beneficiary" as set forth in original Deed of Trust, are hereby reassigned by Quitclaim to NORTH AMERICAN TRUST TITLE, LLC (Trustee), and the "491 S. DOUGLAS WASH ROAD TRUST" a PRIVATE CONTRACT TRUST (Beneficiary).

# ACTUAL AND CONSTRUCTIVE NOTICE

All trustee(s), Successor Trustee(s), and Beneficiary(ies) named in Deed of Trust as Trustor(s) dated January 16, 2007, and recorded January 30, 2007 under Deed of Trust Instrument No. Docket 12981, Page 7551, Sequence 20070201026 are, hereby removed/released/dismissed of all duties, expressed or implied, effective immediately.  The aforesaid trustee(s), Successor Trustee(s), and Beneficiary(ies) are expressly directed to CEASE and DESIST any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number.  Any continued actions of any nature against the property described above may result in legal actions being taken.


_Michael Benson Sparlin_                    _Sharon Jeanette Sparlin_
Michael Benson Sparlin                        Sharon Jeanette Sparlin


State of **ARIZONA**                     )
                                         ) ss
County of Pima                           )

**Subscribed and sworn to** (or affirmed) before me on this _26th_ day of

_February_____, 2010, by _Michael Benson Sparlin / Sharon Jeanette Sparlin_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.


_Wanda E Hammond_                            (seal)
Notary

_7-24-2013_____
My commission expires

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: K_O
            DEPUTY RECORDER
            1861       EAST-2

W
MICHAEL BENSON SPARLIN
9151 E SHOWCASE LN
TUCSON AZ  85749

DOCKET:              13755
PAGE:                   21
NO. OF PAGES:            3
SEQUENCE:     20100390009
              03/01/2010
DEFLT               10:33

MAIL
AMOUNT PAID    $   10.00



Tucson, AZ 85749

*EXHIBIT 11*
*CASE 10-503*

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ 85284
CERTIFIED MAIL # 7009282000042326 2252

**COUNTRYWIDE**
P.O. BOX 60875
LOS ANGELES, CA 90060-0875
CERTIFIED MAIL # 7009 2820 0004 2326 2269

Dated: February 26, 2010

Re: Deed of Trust Record:  Docket 12966, Page 3332, Sequence 20070050717
      Record Date January 8, 2007; APN: 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; Original Loan #8591661

## NOTICE OF DEFAULT

To:  All parties addressed above

**TRUSTOR(S)/GRANTOR(S):** Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby give Notice that the above listed parties have failed to provide Full Disclosure of the Mortgage Loan Process noted above, as required by law and as requested in the CONSTRUCTIVE LEGAL NOTICE OF LAWFUL DEBT VALIDATION DEMAND dated January 19, 2010 and received the above named parties on January 20, 2010. TRUSTEES/GRANTEES were provided 20 business days under Federal Law to respond/answer to the CONSTRUCTIVE LEGAL NOTICE which fully addressed the issue of full disclosure of the entire alleged loan mortgage/deed of trust process, yet failed to respond in the time specified. They have had since January 2, 2007 to provide full disclosure of the Mortgage Loan Process as required under Federal Law.  They have failed to comply.

**LET IT BE KNOWN**
All the above named "Trustee, Successor Trustee(s), Beneficiary(s)", or Assigns, Substitutes, known or unknown are hereby in DEFAULT for their failure to provide FULL DISCLOSURE to Michael Benson Sparlin and Sharon Jeanette Sparlin, and this DEFAULT is cause for canceling the entire alleged loan mortgage/deed of trust process and rescinding of said signatures of Michael Benson Sparlin and Sharon Jeanette Sparlin.

2

## ACTUAL AND CONSTRUCTIVE NOTICE

All Trustee(s), Successor Trustee(s), and Beneficiary(ies) named in Deed of Trust by Trustor(s) dated January 2, 2007, and recorded January 8, 2007 under Deed of Trust Instrument Docket 12966, Page 3332, Sequence 20070050717 are hereby removed/released/dismissed of all duties, expressed or implied, effective immediately. The aforesaid Trustee(s), Successor Trustee(s), and Beneficiary(s) are expressly directed to **CEASE** and **DESIST** any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number. Any continued actions of any nature against the property described above may result in legal actions being taken.


Michael Benson Sparlin

Sharon Jeanette Sparlin


State of **ARIZONA**                    )
                                        ) ss
County of Pima                          )

**Subscribed and sworn to** (or affirmed) before me on this _26th_ day of

_February_____ , 2010, by _Michael Benson Sparlin and_
_Sharon Jeanette Sparlin_ ,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.


Notary

_July 24, 2013_
My commission expires

(seal)

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

# CERTIFICATE OF MAILING

I, Michael Benson Sparlin do hereby solemnly declare that on March 1, 2010

I did cause to be delivered by Federal Express private courier and/or first class

Certified US Mail, true and correct copies of NOTICE OF DEFAULT, NOTICE OF

RIGHT TO CANCEL, NOTICE OF REMOVAL OF TRUSTEE and NOTICE OF REVOCATION

OF POWER OF ATTORNEY, including true and correct copies of all/any documents

referenced therein as "attached hereto" , to the parties and locations listed below:


Date:___March 1, 2010_____          *Michael Benson Sparl___*
                                        Michael Benson Sparlin

**UNIVERSAL AMERICAN MORTGAGE COMPANY**
**1725 W. GREEN TREE DRIVE, SUITE 104**
**TEMPE, AZ  85284**
US Certified Mail Tracking No. _____**70092820000423262242**_____

**COUNTRYWIDE**
**P.O. BOX 60875**
**LOS ANGELES, CA  90060-0875**
US Certified Mail Tracking No. _____**70092820000423262269**_____

| | |
|---|---|
| F. ANN RODRIGUEZ, RECORDER | DOCKET: 13755 |
| RECORDED BY: K_O | PAGE: 24 |
| DEPUTY RECORDER | NO. OF PAGES: 4 |
| 1861    EAST-2 | SEQUENCE: 20100390010 |
| | 03/01/2010 |
| W | NOTICE 10:33 |
| MICHAEL BENSON SPARLIN | |
| 9151 E SHOWCASE LN | MAIL |
| TUCSON AZ  85749 | AMOUNT PAID  $   10.00 |

~~9151 E Showcase Lane~~
Tucson, AZ  85749

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ  85284
CERTIFIED MAIL #7009282000042326 2252

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA  90060-0875
CERTIFIED MAIL #7009282000042326 2269

Dated:  February 26, 2010

Re: Deed of Trust Record:  Docket 12966, Page 3332, Sequence 20070050717
    Record Date January 8, 2007; APN: 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; Original Loan #8591661
    Commonly known address:  7922 S. CLARKSON COURT, TUCSON, ARIZONA

## NOTICE OF RIGHT TO CANCEL
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent

Attention:  Alleged Lender

**Parties:**  MICHAEL BENSON SPARLIN/SHARON JEANETTE SPARLIN (Alleged Borrower(s)
hereinafter "**Borrower**") and UNIVERSAL AMERICAN MORTGAGE COMPANY and
COUNTRYWIDE (Alleged Lender(s) hereinafter "**Lender**")

This communication will serve as our **NOTICE OF RIGHT TO CANCEL** dated February 26,
2010.  TILA (Trust in Lending Act, 15 USC § 1601 et seq; 12 CFR Part 226) allows three (3)
years to review Disclosure Documents.  The referenced 'Three Day Right to Cancel' must have a
trigger to begin.  That trigger is when the Lender has provided the Borrower with ALL of the
required Disclosures under TILA, and that the same are true, complete, accurate, and timely
provided.

Being as the entire purported loan/mortgage process and Deed of Trust referenced herein and
throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and
fraudulent misrepresentation, the borrower has other recourse, right, and cause of action under
numerous state and federal statutes.  Acts of fraud taint/void everything it touches as the US
Supreme Court has declared:  "**There is no question of the general doctrine that fraud**

**vitiates the most solemn contracts, documents, and even judgments."** (United States v. Throckmorton, 98 U.S. 61)

To this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been done, can the '3 DAY RIGHT TO CANCEL' period begin. If the required full Disclosure(s) have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose.

The records thus far evidence that Borrower has requested to cancel within the stipulated three year time period, while still waiting to receive all Truth-In-Lending disclosures as required by Federal Law, which have never been provided.

A close perusal/audit of Borrower mortgage documents has revealed certain Disclosure Violations; and that the Borrower has the remedial right and remedy (UCC 1-201 (32) (34)), inter alia, to invoke their Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lenders, Successor and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, **this written Notice of communication is provided in lieu thereof.**

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's home within twenty (20) business days. The Lender must also return any money, interest, fee and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered – then he/she/they may offer its 'Reasonable Value'.

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within twenty (2) business days, Borrower may then regain/acquire all rights to clear title and re-conveyance under Federal Law and provisions of TILA.

Additionally, Borrower has the right to offer Lender a Reasonable Value. However, the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages i.e., triple the amount of the interest the bank stood to fraudulently make off of the mortgage/loan transaction. Therefore, the Borrowers hereby in good faith make the following offer: Borrowers will forgive UNIVERSAL AMERICAN MORTGAGE COMPANY any liability incurred by its wrongful actions, provided UNIVERSAL AMERICAN MORTGAGE COMPANY rightfully forgive Borrower the full amount of mortgage/credit you fraudulently allege to have given. In addition, Borrower make the one time demand of $177,700 for any loss, damage, and injury they have sustained; and, that UNIVERSAL AMERICAN MORTGAGE COMPANY also remove all/any negative comments on Borrower's credit report attributed to this transaction.

Page **2** of **3**

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) business days of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein and throughout.

Sincerely,


*Michael Benson Sparlin*

**Michael Benson Sparlin** (expressly all rights reserved)
Third Party Interest Intervener, live breathing man/woman
**Real Party in Interest.**


State of **ARIZONA**          )
                                        ) ss
County of Pima                )

**Subscribed and Affirmed**  and having been duly sworn to at

_Tucson, AZ_____ (town/city) before me, a Notary Public for the

said county and state as above noted, do hereby state that the living man/woman,

Michael Benson Sparlin, personally appeared before me and signed the foregoing

instrument.

WITNESS my hand and official seal this _26th_ day of _February_____,2010.


_Wanda E Hammond_
Notary

_7/24/2013_
My commission expires

(seal)

```
WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013
```

# CERTIFICATE OF MAILING

I, Michael Benson Sparlin do hereby solemnly declare that on March 1, 2010

I did cause to be delivered by Federal Express private courier and/or first class

Certified US Mail, true and correct copies of NOTICE OF DEFAULT, NOTICE OF

RIGHT TO CANCEL, NOTICE OF REMOVAL OF TRUSTEE and NOTICE OF REVOCATION

OF POWER OF ATTORNEY, including true and correct copies of all/any documents

referenced therein as "attached hereto" , to the parties and locations listed below:


Date:___March 1, 2010_____        *Michael Benson Sparlin*_____

                                     Michael Benson Sparlin


**UNIVERSAL AMERICAN MORTGAGE COMPANY**
**1725 W. GREEN TREE DRIVE, SUITE 104**
**TEMPE, AZ  85284**
US Certified Mail Tracking No. _____**70092820000423262242**_____

**COUNTRYWIDE**
**P.O. BOX 60875**
**LOS ANGELES,  CA  90060-0875**
US Certified Mail Tracking No. _____**70092820000423262269**_____

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: K_O

    DEPUTY RECORDER
    1861    EAST-2

W
MICHAEL BENSON SPARLIN
9151 E SHOWCASE LN
TUCSON AZ  85749

DOCKET:                    13755
PAGE:                         28
NO. OF PAGES:               3
SEQUENCE:      20100390011
             03/01/2010
RVPOA                     10:33

MAIL
AMOUNT PAID     $    10.00

~~9151 E Showcase Lane~~
Tucson, AZ 85749

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ 85284
CERTIFIED MAIL # 7009 2820 0004 2326 2252

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA  90060-0875
CERTIFIED MAIL # 7009 2820 0004 2326 2269

Dated:  February 26, 2010

Re: Deed of Trust Record: Docket 12966, Page 3332, Sequence 20070050717
     Record Date January 8, 2007; APN: 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; Original Loan #8591661
     Commonly known address: 7922 S. CLARKSON COURT, TUCSON, ARIZONA

## NOTICE OF REVOCATION OF POWER OF ATTORNEY

### To: All parties addressed above

Michael Benson Sparlin and Sharon Jeanette Sparlin DO HEREBY DECLARE:

That, due to the discovery of various elements of fraud, fraudulent inducement, fraudulent misrepresentation, entrapment, and nondisclosure resulting in the deprivation of our property by UNIVERSAL AMERICAN MORTGAGE COMPANY and/or by any of its agents and/or assignees; and, after a recent review/audit and a close perusal of the purported Loan, Trust Deed, and Security Agreement records – We, Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby refuse to knowingly accept, or otherwise participate in ANY part of fraud and other wrongful actions involving the purported Promissory Note/Security Instrument/Trust Deed; and, further, do hereby revoke, rescind, and terminate all our signatures relating to any/all said deeds, notes, and agreements from their inception.

Furthermore, We, Michael Benson Sparlin and Sharon Jeanette Sparlin, do hereby revoke, terminate, and rescind all Powers of Attorney, in fact or otherwise, previously assigned by us, implied in law, by trust or otherwise, with or without our consent and/or knowledge, as such pertains to any property, real or personal, promissory note, deed of trust and mortgage signed on the date of January 2, 2007 or otherwise, under Deed of Trust Record No Docket 12966, Page 3332, Sequence 20070050717 and recorded January 8, 2007, involving the property specifically addressed and identified as 7922 S. CLARKSON COURT, TUCSON, ARIZONA.

3

_Michael Benson Sparlin_          _Sharon Jeanette Sparlin_
Michael Benson Sparlin                      Sharon Jeanette Sparlin

State of **ARIZONA**                     )
                                         ) ss
County of Pima                           )

**Subscribed and sworn to** (or affirmed) before me on this _26th_ day of

_February_ _____, 2010, by _Michael Benson Sparlin  and_
                              _Sharon Jeanette Sparlin_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.


_Wanda E Hammonds_
Notary

_7/24/2013_
My commission expires

(seal)

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

# CERTIFICATE OF MAILING

I, Michael Benson Sparlin do hereby solemnly declare that on March 1, 2010

I did cause to be delivered by Federal Express private courier and/or first class

Certified US Mail, true and correct copies of NOTICE OF DEFAULT, NOTICE OF

RIGHT TO CANCEL, NOTICE OF REMOVAL OF TRUSTEE and NOTICE OF REVOCATION

OF POWER OF ATTORNEY, including true and correct copies of all/any documents

referenced therein as "attached hereto" , to the parties and locations listed below:


Date:___March 1, 2010_____          _Michael Benson Sparlin_____
                                        Michael Benson Sparlin


**UNIVERSAL AMERICAN MORTGAGE COMPANY**
**1725 W. GREEN TREE DRIVE, SUITE 104**
**TEMPE, AZ 85284**
US Certified Mail Tracking No. _____**70092820000423262242**_____

**COUNTRYWIDE**
**P.O. BOX 60875**
**LOS ANGELES,  CA  90060-0875**
US Certified Mail Tracking No. _____**70092820000423262269**_____

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: K_O
        DEPUTY RECORDER
        1861    EAST-2

W
MICHAEL BENSON SPARLIN
9151 E SHOWCASE LN
TUCSON AZ  85749



| | |
|---|---|
| DOCKET: | 13755 |
| PAGE: | 31 |
| NO. OF PAGES: | 4 |
| SEQUENCE: | 20100390012 |
| | 03/01/2010 |
| NOTICE | 10:33 |
| MAIL | |
| AMOUNT PAID $ | 10.00 |

Tucson, AZ 85749

**To:**
**UNIVERSAL AMERICAN MORTGAGE COMPANY**
1725 W. GREEN TREE DRIVE, SUITE 104
TEMPE, AZ 85284
CERTIFIED MAIL # 7009282000042326 2252

**COUNTRYWIDE**
P.O.BOX 60875
LOS ANGELES, CA 90060-0875
CERTIFIED MAIL # 7009 2820 0004 2326 2269

**NORTH AMERICAN TITLE COMPANY**
3200 E. CAMELBACK ROAD #150
PHOENIX, AZ 85018
CERTIFIED MAIL # 7009 2820 0004 2326 2276

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
1818 LIBRARY STREET, SUITE 300
RESTON, VIRGINIA 20190-6280
CERTIFIED MAIL # 7009 2820 0006 2326 2283

Dated: February 26, 2010

Re: Deed of Trust Record: Docket 12966, Page 3332, Sequence 20070050717
    Record Date January 8, 2007; APN: 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; Original Loan #8591661
    Commonly known address: 7922 S. CLARKSON COURT, TUCSON, ARIZONA

## NOTICE OF REMOVAL OF TRUSTEE

**To: All parties addressed above**

TRUSTOR(S)/GRANTOR(S): Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby
give reference to the Deed of Trust drawn and executed by Michael Benson Sparlin and Sharon
Jeanette Sparlin, as Trustor(s)/Grantor(s)/Creator(s) with further reference given to the
following described real property situated in said county and state, to wit:

Lot 133 of VISTA MONTANA ESTATES PHASE ONE, according to the map or plat thereof of
record in the office of the county recorder, Pima County, Arizona, in book 58 of maps and plats
at page 96 thereof and as amended by declaration of Scrivener's error recorded in docket
12773 at page 5485.

4

The street address or other common designation, if any, of the real property described above is purported to be:  7922 S. CLARKSON COURT, TUCSON, ARIZONA

GRANTOR(S)/TRUSTOR(S):  Michael Benson Sparlin and Sharon Jeanette Sparlin by actual and constructive notice do hereby declare:

1. **Effective immediately**, the undersigned Michael Benson Sparlin and Sharon Jeanette Sparlin forever removes/releases/discharges all: "Trustee(s), Successor Trustee(s), Substituted Trustee, Agent(s), Servicer(s), Assign(s), Transfer(s), known and unknown.", including UNIVERSAL AMERICAN MORTGAGE COMPANY, 1725 W. GREEN TREE DRIVE, SUITE 104, TEMPE, AZ  85284 and COUNTRYWIDE, P.O. BOX 60875, LOS ANGELES, CA 90060-0875 existing under the laws of ARIZONA; and, Thereby removing and terminating the same from any/all duties and forever barring/stopping the aforesaid from any further appointments or assignments originally granted or contained within the Deeds of Trusts concerned herein.

2. **Effective immediately**, the undersigned Michael Benson Sparlin and Sharon Jeanette Sparlin forever Revokes/Cancels/Voids/Rescinds any/all duties, appointments, or assignments originally granted by Power of Attorney, authority, or otherwise granted/granting, and/or signs/signatures, assigned/assigning to any party(ies) including the alleged lender and successors, known and unknown including but not limited to: UNIVERSAL AMERICAN MORTGAGE COMPANY, COUNTRYWIDE HOME LOANS, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., addressed named above; Thereby removing and terminating the same from any/all duties and forever barring/stopping the aforesaid of any further appointments of any/all "TRUSTEE(S)", "SUCCESSOR TRUSTEE(S)", "SUBSTITUTES", or "BENEFICIARY(IES)".

## LET IT BE KNOWN

All the above named "Trustee, Successor Trustee(s), Beneficiary(ies)", or Assigns, Substitutes, known or unknown in clauses 1 and 2 above, are hereby directed to immediately **CEASE** and **DESIST** any further actions through said appointments/assignments granted in or from Record Docket 12966, Page 3332, Sequence 20070050717, dated January 8, 2007.  **ANY** such continued or further action by ANY of the above named parties may result in legal actions against them.

**Be it further known**, GRANTOR(S)/TRUSTOR(S):  Michael Benson Sparlin and Sharon Jeanette Sparlin do hereby declare that:  Effective immediately, all duty(s) and benefit(s) of "Trustee" and "Beneficiary" as set forth in original Deed of Trust, are hereby reassigned by Quitclaim to NORTH AMERICAN TRUST TITLE, LLC (Trustee), and the "7922 S. CLARKSON COURT TRUST" a PRIVATE CONTRACT TRUST (Beneficiary).

## ACTUAL AND CONSTRUCTIVE NOTICE

All trustee(s), Successor Trustee(s), and Beneficiary(ies) named in Deed of Trust as Trustor(s) dated January 2, 2007, and recorded January 8, 2007 under Deed of Trust Instrument No. Docket 12966, Page 3332, Sequence 20070050717 are, hereby removed/released/dismissed of all duties, expressed or implied, effective immediately.  The aforesaid trustee(s), Successor Trustee(s), and Beneficiary(ies) are expressly directed to CEASE and DESIST any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number.  Any continued actions of any nature against the property described above may result in legal actions being taken.


_Michael Benson Sparlin_
Michael Benson Sparlin

_Sharon Jeanette Sparlin_
Sharon Jeanette Sparlin

State of **ARIZONA**          )
                             ) ss
County of Pima               )

**Subscribed and sworn to** (or affirmed) before me on this _26th_ day of

_February_____, 2010, by _Michael Benson SPARLIN AND SHARON JEANETTE SPARLIN_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.


_Wanda E Hammonds_
Notary

_7/24/2013_
My commission expires

(seal)

WANDA E. HAMMONDS
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
July 24, 2013

# CERTIFICATE OF MAILING

I, Michael Benson Sparlin do hereby solemnly declare that on March 1, 2010

I did cause to be delivered by Federal Express private courier and/or first class

Certified US Mail, true and correct copies of NOTICE OF REMOVAL OF TRUSTEE

including true and correct copies of all/any documents referenced therein as "attached

hereto" , to the parties and locations listed below:


Date:___March 1, 2010_____          _Michael Benson Sparlin_____

Michael Benson Sparlin

---

**UNIVERSAL AMERICAN MORTGAGE COMPANY**
**1725 W. GREEN TREE DRIVE, SUITE 104**
**TEMPE, AZ  85284**
US Certified Mail Tracking No. _____**70092820000423262242**_____

**COUNTRYWIDE**
**P.O. BOX 60875**
**LOS ANGELES,  CA  90060-0875**
US Certified Mail Tracking No. _____**70092820000423262269**_____

**NORTH AMERICAN TITLE COMPANY**
**3200 E. CAMELBACK ROAD #150**
**PHOENIX, AZ 85018**
US Certified Mail Tracking No. _____**70092820000423262276**_____

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**1818 LIBRARY STREET, SUITE 300**
**RESTON, VIRGINIA  20190-6280**
US Certified Mail Tracking No. _____**70092820000423262283**_____

On this first day of winter, the New Jersey Supreme Court has published and forwarded to members of the New Jersey Bar a series of new rules and regulations requiring foreclosing Plaintiffs and their attorneys to file a series of documents with the courts as to not only new foreclosure filings, but also pending actions where no judgment has been entered and as well in cases where judgment has been entered but no sale has taken place. The rules follow practices in other states such as Florida, where the Supreme Court required all residential foreclosure actions filed as of February 12, 2010 to be verified.

The New Jersey Rules, however, go much farther. To quote the "Notice to the Bar" from the Acting Administrative Director of the Courts in his Notice of December 20, 2010:

"In light of irregularities in the residential foreclosure practice as reported in sworn deposition testimony in New Jersey and other states, the Court has adopted, on an emergent basis, amendments to Rules 1:5-6, 4:64-1, and 4:64-2. These amendments are effective December 20, 2010."

"The rule amendments require plaintiff's counsel in all residential foreclosure actions to file with the court (a) an affidavit or certification executed by the attorney that the attorney has communicated with an employee or employees of the plaintiff who (a) personally reviewed documents for accuracy and (b) confirmed the accuracy of all court filings in the case to date; (2) the name(s), titles(s), and responsibilities of the employee(s) of the plaintiff who provided this information to the attorney; and (3) an affidavit or certification executed by the attorney that all the filings in the case comport with all requirements of Rule 1:4-8(a)."

Note that these rules, which came about in part due to the information revealed as to "robo-signers" and other fraudulent documents filed in foreclosure actions, require the identity of the employee(s) of the PLAINTIFF who provided the information. As such, in actions where a securitized trustee bank is the plaintiff, the servicer could arguably not provide the information as the servicer is not the plaintiff. The reverse would be true where the servicer is the plaintiff.

The Rules also provide that these documents are required to be filed not only in new foreclosure cases, but in pending actions as well including actions where judgment has already been entered:

"Plaintiff's counsel shall file such documents (1) immediately upon the commencement of any new residential foreclosure action filed after the effective date of the new rule and amendments, as to the accuracy of the information contained in the complaint, as set forth in Rule 4:64-1(b)(1) through (13); (2) within 60 days in any residential foreclosure action today pending and awaiting judgment, as to the accuracy of the complaint and of any proofs submitted; (3) within 45 days in any residential foreclosure action in which judgment was entered but no sale of the property has occurred; and (4) with the motion to enter judgment in all future foreclosure actions in which judgment is sought, as to the accuracy of any proofs submitted pursuant to Rule 4:64-2."

These sweeping rule changes now force New Jersey foreclosure mills such as Phelan Hallinan & Schmeig and Zucker Goldberg to verify their filings and proofs under oath. As the rule changes also apply to a series of pending, pre-sale foreclosure actions as well, we expect to see borrower challenges to existing foreclosure actions if the required documentation is not filed as required. Further, by forcing the foreclosing Plaintiffs and their law Firms to disclose the identity of representatives, this will streamline discovery including depositions.

Finally, the Court has also scheduled a hearing for January 19, 2011 at 9:30 a.m. in Trenton at which time certain named foreclosure mills such as Phelan Hallinan and Zucker Goldberg must appear before the court to show cause why the court should not order certain prohibitive actions in foreclosure cases.

FDN's New Jersey attorneys will thus be undertaking action in their pending foreclosure cases in connection with these new Rule changes.

Jeff Barnes, Esq., www.ForeclosureDefenseNationwide.com

*EXHIBIT 13*

*CASE 10-503*

## SPARLIN CASE #10-503

### BAR ASSOCIATION/CASE DECISIONS

Quoting from the Bar Association's Official Website www.abanet.org

> "this Court has the responsibility to assure itself that the foreclosure plaintiffs have standing and that subject matter jurisdiction requirements are met at the time the complaint is filed. Even without the concerns raised by the documents the plaintiffs have filed, there is reason to question the existence of standing and the jurisdictional amount".

*Bowen v. Needles Nat. Bank,* 94 F 925 36 CCA 553, certiorari denied in 20 S.Ct 1024, 176 US 682, 44 LED 637. "A national bank has no power to lend its credit to any person or corporation . . . "

*Countrywide Home Loans, Inc. v Taylor* - Mayer, J., Supreme Court, Suffolk County  9/07

*American Brokers Conduit v. ZAMALLOA* - Judge SCHACK 28Jan2008

*Aurora Loan Services v. MACPHERSON* - Judge FARNETI 1 1Mar2008

"A bank may not lend its credit to another even though such a transaction turns out to have been of benefit to the bank, and in support of this a list of cases might be cited, which would *look like a catalog of ships.*" [Emphasis added] *Norton Grocery Co. v. Peoples Nat. Bank,* 144 SE 505. 151 Va 195.

"In the federal courts, it is well established that a national bank has not power to lend its credit to another by becoming surety, indorser, or guarantor for him.'" *Farmers and Miners Bank v. Bluefield Nat 'l Bank,* 11 F 2d 83, 271 U.S. 669.

*Bank of New York v. SINGH* - Judge KURTZ 14Dec2007

*Bank of New York v. TORRES* - Judge COSTELLO 11Mar2008

*Bank of New York v. OROSCO* - Judge SCHACK 19Nov2007

*Citi Mortgage Inc. v. BROWN* - Judge FARNETI 13Mar2008

"The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often...." *Zinc Carbonate Co. v. First National Bank,* 103 Wis 125, 79 NW 229.

*American Express Co. v. Citizens State Bank,* 194 NW 430.

"It has been settled beyond controversy that a national bank, under federal Law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires . . ." *Howard & Foster Co. v. Citizens Nat'l Bank of Union,* 133 SC 202, 130 SE 759(1926).

". . . checks, drafts, money orders, and bank notes are not lawful money of the United States ..." *State v. Neilon,* 73 Pac 324, 43 Ore 168.

*American Brokers Conduit v. ZAMALLOA* - Judge SCHACK 11 Sep2007
*Countrywide Mortgage v. BERLIUK* - Judge COSTELLO 1 3Mar2008

*Deutsche Bank v. Barnes*-Judgment Entry

Deutsche Bank v. Barnes-Withdrawal of Objections and Motion to Dismiss
      *Deutsche Bank v. ALEMANY* Judge COSTELLO 07Jan2008
      *Deutsche Bank v. Benjamin CRUZ* – Judge KURTZ 21May2008
      *Deutsche Bank v. Yobanna CRUZ* - Judge KURTZ 21May2008
      *Deutsche Bank v. CABAROY* - Judge COSTELLO 02Apr2008
      *Deutsche Bank v. CASTELLANOS* / 2007NYSlipOp50978U/- Judge SCHACK 11May2007

*Deutsche Bank v. CASTELLANOS*/ 2008NYSlipOp50033U/ - Judge SCHACK 14Jan 2008

*HSBC v. Valentine* - Judge SCHACK calls them liars and dismisses WITH prejudice **

*Deutsche Bank v. CLOUDEN* / 2007NYSlipOp5 1 767U/ Judge SCHACK 1 8Sep2007

*Deutsche Bank v. EZAGUI* - Judge SCHACK 21Dec2007

*Deutsche Bank v. GRANT* - Judge SCHACK 25Apr2008

*Deutsche Bank v. HARRIS* - Judge SCHACK 05Feb2008

*Deutsche Bank v. LaCrosse*, Cede, DTC Complaint

*Deutsche Bank v. NICHOLLS* - Judge KURTZ 21May2008

*Deutsche Bank v. RYAN* - Judge KURTZ 29Jan2008

*Deutsche Bank v. SAMPSON* - Judge KURTZ 16Jan2008

*Deutsche v. Marche* - Order to Show Cause to VACATE Judgment of Foreclosure – 11 June2009
*GMAC Mortgage LLC v. MATTHEWS* - Judge KURTZ 10Jan2008

*GMAC Mortgage LLC v. SERAFINE* - Judge COSTELLO 08Jan2008

*HSBC Bank USA NA v. CIPRIANI* Judge COSTELLO 08Jan2008

*HSBC Bank USA NA v. JACK* - Judge COSTELLO 02Apr2008

*IndyMac Bank FSB v. RODNEY-ROSS* - Judge KURTZ 15Jan2008

*LaSalleBank NA v. CHARLEUS* - Judge KURTZ 03Jan2008

*LaSalleBank NA v. SMALLS* - Judge KURTZ 03Jan2008

*PHH Mortgage Corp v. BARBER* - Judge KURTZ 15Jan2008
*Property Asset Management v. HUAYTA* 05Dec2007

*Rivera, In Re Services LLC v. SATTAR* / 2007NYSlipOp5 1 895U/ - Judge SCHACK 09Oct2007

*USBank NA v. AUGUSTE* - Judge KURTZ 27Nov2007

*USBank NA v. GRANT* - Judge KURTZ 14Dec2007

*USBank NA v. ROUNDTREE* - Judge BURKE 11Oct2007

*USBank NA v. VILLARUEL* - Judge KURTZ 01Feb2008

*Wells Fargo Bank NA v. HAMPTON* - Judge KURTZ 03 Jan2008

*Wells Fargo, Litton Loan v. Farmer* with prejudice - Judge Schack June2008

*Wells Fargo v. Reyes* with prejudice, Fraud on Court & Sanctions - Judge Schack June2008

*Deutsche Bank v. Peabody* Judge Nolan (Regulation Z)

*Indymac Bank,FSB v. Boyd* - Schack J. January 2009

*Indymac Bank, FSB v. Bethley* - Schack, J. February 2009 ( The tale of many hats)

*LaSalle Bank Natl. Assn. v Ahearn* - Appellate Division, Third Department (Pro Se)
 New Jersey court dismisses foreclosure filed by Deutsche Bank for failure to produce the
 note.

*Novastar v. Snyder  (lack of standing)* Snyder *(motion to amend w/prejudice)* Snyder *(response to amend)*

*Washington Mutual v. City of Cleveland (WAMU's motion to dismiss)*

2008-Ohio-1177; *DLJ Mtge. Capital, Inc. v. Parsons* (*SJ Reversed for lack of standing*)

*Everhome v. Rowland Deutsche - Class Action (RICO) Bank of New York v. TORRES* - Judge
Costello 1 1Mar2008

*MERS v. Young / 2nd Circuit Court of Appeals* - Texas – Panel: Livingston, Dauphinot and McCoy, JJ

*MERS crushed: In re Mitchell* - Nevada

"Neither, as included in its powers not incidental to them, is it a part of a bank's business to lend its credit. If a bank could lend its credit as well as its money, it might, if it received compensation and was careful to put its name only to solid paper, make a great deal more than any lawful interest on its money would amount to. If not careful, the power would be the mother of panics, . . . Indeed, lending credit is the exact opposite of lending money, which is the real business of a bank, for while the latter creates a liability in favor of the bank, the former gives rise to a liability of the bank to another. *I Morse. Banks and Banking* 5th Ed. Sec 65; *Magee, Banks and Banking*, 3rd Ed. Sec 248." *American Express Co. v. Citizens State Bank,* 194 NW 429.

"It is not within those statutory powers for a national bank, even though solvent, to lend its credit to another in any of the various ways in which that might be done." *Federal Intermediate Credit Bank v. L 'Herrison,* 33 F 2d 841, 842 (1929).

"There is no doubt but what the law is that a national bank cannot lend its credit or become an accommodation endorser." *National Bank of Commerce v. Atkinson,* 55 E 471.

"A bank can lend its money, but not its credit." *First Nat'l Bank of Tallapoosa v. Monroe* . 135 Ga 614, 69 SE 1124, 32 LRA (NS) 550.

".. . the bank is allowed to hold money upon personal security; but it must be money that it loans, not its credit." *Seligman v. Charlottesville Nat. Bank,* 3 Hughes 647, Fed Case No.12, 642, 1039.

"A loan may be defined as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement, express or implied, to repay the sum with or without interest." *Parsons v. Fox* 179 Ga 605, 176 SE 644. Also see *Kirkland v. Bailey,* 155 SE 2d 701 and *United States v. Neifert White Co.,* 247 Fed Supp 878, 879.

"The word 'money' in its usual and ordinary acceptation means gold, silver, or paper money used as a circulating medium of exchange . . ." *Lane v. Railey* 280 Ky 319, 133 SW 2d 75.

"A promise to pay cannot, by argument, however ingenious, be made the equivalent of actual payment ..." *Christensen v. Beebe,* 91 P 133, 32 Utah 406.

"A bank is not the holder in due course upon merely crediting the depositors account." *Bankers Trust v. Nagler,* 229 NYS 2d 142, 143.

"A check is merely an order on a bank to pay money." *Young v. Hembree,* 73 P2d 393

"Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." *Barnsdall Refining Corn. v. Birnam Wood Oil Co.* 92 F 26 817.

"Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." *Leonard v. Springer* 197 Ill 532. 64 NE 301.

"If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." *Menominee River Co. v. Augustus Spies L & C Co.,*147 Wis 559-572; 132 NW 1122.

"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Agency v. Guardian Mut. Savings Bank,* 227 Wis 550, 279 NW 83.

"It is not necessary for recission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." *Whipp v. Iverson,* 43 Wis 2d 166.

"Each Federal Reserve bank is a separate corporation owned by commercial banks in its region ..." *Lewis v. United States,* 680 F 20 1239 (1982).

*EXHIBIT 67 of 67*

*CASE 10-503*

**Brian Davies**

# SEC Goes Deeper in Foreclosure Fraud Examination

By: David Dayen Friday December 17, 2010 1:05 pm



The Securities and Exchange Commission has issued additional subpoenas for documents from the big banks in a growing probe over servicer behavior and foreclosure fraud. They seem particularly interested in securitization, and whether the assets, i.e. the mortgage and the note, were ever properly conveyed to the trusts.

*U.S. regulators have opened a new line of inquiry in their mortgage foreclosure probe and are asking big Wall Street banks about the beginning stages of mortgage securitization, two sources familiar with the probe said.*

*The Securities and Exchange Commission launched the new phase of its investigation by sending out a fresh round of subpoenas last week to big banks like Bank of America Corp (BAC.N), Citigroup Inc (C.N), JPMorgan Chase & Co (JPM.N), Goldman Sachs Group Inc (GS.N) and Wells Fargo & Co (WFC.N), the sources said.*

*The subpoenas focus on the earliest stage of the mortgage securitization process, said the sources, who requested anonymity because the probe is not public.*

*The sources said the SEC is asking for information about the role of so-called "master servicers" — specialized firms that oversee the selection and maintenance of the large pool of home loans that go into every mortgage-backed bond.*

This is a very important development. The failure of the trustees to convey the loans to the trusts would mean that the mortgage-backed securities are backed by nothing. It would mean that the banks committed outright fraud on the investors. And it would make the trustees liable for taking back all the MBS from investors at par.

As Yves Smith says, more needs to be done here. The SEC should look at the automatic servicer software that generates additional late fees, and basically look at all the servicer practices known to be fraudulent. They need to understand how random Wall Street Journal reporters could get letters about loan modifications on properties where they have no mortgage. They need to examine the rot in the system. But this is a big and perhaps more costly step for the banks, because the investors are a worthy adversary for them, from a financial standpoint.

Meanwhile, in a separate incident, the overseer of the GSEs is resisting principal reductions for underwater borrowers, despite an Administration program designed to allow for that. Since Fannie Mae and Freddie Mac own so many loans – they own or guarantee about half of all mortgages – it's crucial to get sign-off from the FHFA in order for the principal reduction program to succeed (the Administration has a few of them up and running). But this is where the FHFA's Ed DeMarco's insistence on reducing taxpayer losses has its negative side. It's good that, as an investor in mortgages, he's trying to put back illegal loans on the banks; it's bad that he's not allowing the write-downs needed for housing costs to come down, which would actually stabilize and save the GSEs money in the long term.

*John Taylor, the head of the nonprofit National Community Reinvestment Coalition, says Fannie and Freddie could easily and quickly affect the overall housing market. "They have the greatest authority and portfolio to make an impact," said Taylor. There are tens of thousands of loans "they can take care of tomorrow," he said.*

*But data show that Fannie and Freddie don't reduce principal, even if it might save them money in the long term. The reason: Their regulator won't let them. (The regulator, the Federal Housing Finance Agency, declined to comment.)*

The SEC investigation and Fannie and Freddie's reluctance to reduce principal connect, in a way, because the banks will be rushing for a principal work-out when faced with the need to take back hundreds of billions in mortgages due to faulty processes. Fannie and Freddie will be on both sides of that equation; with the government basically owning them right now, they ought to make the choice.